UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID SMITH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE & CO., JAMES DIMON, INA R. DREW and DOUGLAS L. BRAUNSTEIN,<br><br>Defendants. | **Civil Action No. 12-cv-3852(GBD)** |
| SARATOGA ADVANTAGE TRUST – FINANCIAL SERVICES PORTFOLIO, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE & CO., JAMIE DIMON, DOUGLAS L. BRAUNSTEIN,<br><br>Defendants. | **Civil Action No. 12-cv-3879(CM)** |

[Captions continue on the following page.]

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ANTHONY CONSTANTINOU'S MOTION TO CONSOLIDATE, TO BE APPOINTED LEAD PLAINTIFF AND <u>FOR APPROVAL OF HIS SELECTION OF CO-LEAD COUNSEL</u>**

| | |
|---|---|
| GREGORY SCRYDOFF, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>JPMORGAN CHASE & COMPANY, THE JPMORGAN CHASE RETIREMENT PLAN, JPMORGAN CHASE BANK, N.A., JPMORGAN COMPENSATION 7 MANAGEMENT DEVELOPMENT COMMITTEE, BERNADETTE J. ULISSI, DAVID C. NOVAK, STEPHEN B. BURKE, LEE R. RAYMOND, WILLIAM WELDON, JOHN DOES 1-10, JAMES DIMON, INA R. DREW, DOUGLAS L. BRAUNSTEIN, JOHN DOES 1-100,<br><br>      Defendants, | **Civil Action No. 12-cv-4027(GBD)** |
| PIPEFITTERS LOCAL UNION #537 TRUST FUNDS, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>JPMORGAN CHASE & CO., JAMES DIMON, INA R. DREW, and DOUGLAS L. BRAUNSTEIN,<br><br>      Defendants, | **Civil Action No. 12-cv-4552(GBD)** |

[Captions continue on the following page.]

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all other similarly situated stockholders,<br><br>                    Plaintiff,<br><br>            v.<br><br>JP MORGAN CHASE & CO., JAMES DIMON, INA R. DREW, and DOUGLAS L. BRAUNSTEIN,<br><br>                    Defendants, | **Civil Action No. 12-cv-4729(GBD)** |

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

PROCEDURAL HISTORY.............................................................................................. 2

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT .................................................................................................................... 4

   POINT I
      Consolidation Is Appropriate Rule 42(a) of the
      Federal Rules of Civil Procedure provides: ........................................................ 4

   POINT II
      Mr. Constantinou Meets The PSLRA's Requirements For
      Appointment As Lead Plaintiff .............................................................................. 5

     A.  The PSLRA's Procedural Requirements ........................................................... 6

     B.  Mr. Constantinou Has Moved To Be Appointed Lead Plaintiff......................... 7

     C.  Mr. Constantinou Has The Largest Financial Interest In The Actions.............. 7

     D.  Mr. Constantinou Otherwise Satisfies The Requirements Of Rule 23
        Of The Federal Rules Of Civil Procedure.......................................................... 8

   POINT IV
      MR. CONSTANTINOU'S CHOICE OF Co-Lead Counsel Should Be Approved .................... 11

CONCLUSION................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

**Rules and Statutes**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Fed. R. Civ. P. 42 ........................................................................................................................ 4, 5

Private Securities Litigation Reform Act of 1995 ................................................................. *passim*

Securities Exchange Act of 1934, Rule 10b-5 ............................................................................ 1, 2

Securities Exchange Act of 1934, Section 20(a) .................................................................... 1, 2, 5

Securities Exchange Act of 1934, Section 21D(a)(3)(B)(ii) ........................................................... 5

Securities Exchange Act of 1934, Section 10(b) .................................................................... 1, 2, 5

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,*
   222 F.3d 52, 60 (2d Cir. 2000) ................................................................................................. 11

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,*
   504 F.3d 229 (2d Cir. 2007) ..................................................................................................... 10

*In re Borden Chemicals and Plastics Operating Ltd. Partnership,*
   336 B.R. 214 (D. Del. 2006) ....................................................................................................... 3

*In re Centerline Holding Co. Sec. Litig.,*
   No. 08 Civ. 505, 2008 WL 1959799 (S.D.N.Y. May 5, 2008) ................................................... 8

*In re Flag Telecom Holdings Ltd. Sec. Litig.,*
   574 F.3d 29 (2d Cir. 2009) ....................................................................................................... 11

*Janbay v. Canadian Solar, Inc.,*
   272 F.R.D. 112 (S.D.N.Y. 2010) .............................................................................................. 10

*Kaplan v. Gelfond,*
   240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................................................. 5

*Seidel v. Noah Educ. Holdings Ltd.,*
   Nos. 08 Civ. 9203(RJS), 2009 WL 700782 (S.D.N.Y. Mar. 9, 2009) ....................................... 9

Anthony Constantinou submits this Memorandum of Law in Support of his Motion to Consolidate, to be Appointed Lead Plaintiff, and for Approval of his Selection of Lead Counsel.

## INTRODUCTION

Mr. Constantinou seeks consolidation of above-captioned federal securities class actions. He also seeks to be appointed Lead Plaintiff, representing himself and all other persons or entities, except for Defendants, who purchased or otherwise acquired publicly traded securities of JPMorgan Chase & Co. ("JPMorgan"), during the period between April 13, 2012 and May 10, 2012 inclusive (the "Class Period"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). The defendants include JPMorgan and certain of its officers and directors.

The above-captioned actions (the "Actions") have similar facts and issues of law and should be consolidated. Mr. Constantinou should be appointed Lead Plaintiff because he: (1) timely moved for appointment as Lead Plaintiff; (2) has a substantial financial interest in the litigation; and (3) will adequately represent the interests of the Class. *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(iii). Further, Mr. Constantinou's selection of Murray Frank LLP and Finkelstein & Krinsk LLP as Co-Lead Counsel for the Class should be approved by the Court because, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the presumptive Lead Plaintiff selects Lead Counsel, and both have firms extensive experience in litigating claims of this type and will adequately represent the interests of Mr. Constantinou and the absent Class members.

## PROCEDURAL HISTORY

On May 14, 2012, a securities fraud class action was filed against JPMorgan and certain of its officers and directors, captioned *Smith v. JPMorgan Chase & Co., et al.,* No. 12cv3582 (the "*Smith* Action"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). Counsel for the plaintiff in the *Smith* Action filed notice on BUSINESS WIRE, indicating that the deadline for filing of lead plaintiff motions is July 13, 2012.[1] A copy of that notice is attached as Exhibit A to the Declaration of Gregory B. Linkh in Support of Anthony Constantinou's Motion to Consolidate, to be Appointed Lead Plaintiff for the Class, and for Approval of His Selection of Lead Counsel ("Linkh Declaration"), sworn to on July 13, 2012, submitted herewith.

Subsequently, between May 15, 2012 and June 15, 2012, four other actions captioned above were filed in the Southern District of New York alleging similar issues of fact and law.

Mr. Constantinou purchased JPMorgan securities during the relevant period and now moves to be appointed Lead Plaintiff of the Class. His certification is attached as Exhibit B to the Linkh Declaration.

## STATEMENT OF FACTS

Defendant JPMorgan is one of the world's largest financial services companies and retail banking companies. The Actions arise out of the materially false and misleading statements and omissions by JPMorgan's Chairman and Chief Executive Officer James "Jamie" Dimon and

---

[1] The notice of the *Smith* Action included a class period from April 13, 2012 to May 11, 2012. However, as described herein, the alleged fraud was disclosed in a May 10, 2012 after-hours investors conference call. Accordingly, investors who purchased on May 11, 2012 would not have been affected by the fraud. Therefore, Mr. Constantinou considers the class period to end on May 10, 2012.

Chief Financial Officer Douglas L. Braunstein that were made during the Company's April 13, 2012 conference call with public investors. During the call, Defendants misrepresented the losses and risk of loss to the Company arising from massive bets on derivative contracts related to credit indexes reflecting interest rates on corporate bonds. These derivative bets went horribly wrong, resulting in billions of dollars in lost capital for the Company and billions more in lost market capitalization for JPMorgan shareholders.

JPMorgan's credit index derivative positions were so large that they generated market rumors and press coverage in the weeks leading up to the April 13th conference call, such that Dimon and Braunstein knew or could not reasonably have been unaware of the magnitude of losses being incurred by JPMorgan, and the risks the derivative positions posed – and pose – to the financial stability of JPMorgan, its credit rating, and its reputational capital. Instead of disclosing the true nature of JPMorgan's derivative bets, and the actual losses that had been incurred at the time, Dimon and Braunstein attempted to contradict the press coverage by falsely labeling the derivative positions as mere "hedging" strategies.[2] Defendant Dimon went so far as to call the press reports a "complete tempest in a teapot." Less than a month later, on May 10,

---

[2] Dimon and Braunstein falsely described these derivative bets as "hedges" even though they knew the derivative positions could not – *definitionally* – be construed as such. This is because a "hedge" is structured to offset losses in a corresponding investment, not generate revenue as was the case with JPMorgan's derivative positions. *See, e.g., In re Borden Chemicals and Plastics Operating Ltd. Partnership,* 336 B.R. 214, 220-221 (D. Del. 2006) (citing Black's Law Dictionary as defining a "hedge" to mean either "[t]o use two compensating or offsetting transactions to ensure a position of breaking even," or "to make advance arrangements to safeguard oneself from loss on an investment, speculation, or bet"); *In re Ashanti Goldfields Sec. Litig.,* 184 F.Supp.2d 247, 253-54 (E.D.N.Y. 2002) ("courts and, presumably, investors and parties in commodities markets, have defined 'hedging' and 'speculation' and distinguished between them. Indeed, ever since it began considering the futures market, the Supreme Court has distinguished between players who seek to insure themselves against price changes, and those who seek to profit by taking positions in the market.") The Individual Defendants' description of the trades as "hedges" thus falsely communicated to the marketplace that the derivative bets posed no risk of loss to the Company, which was egregiously far from the truth.

3

2012, JPMorgan held an after-hours investors conference call, where Defendant Dimon contradicted the representations he and Braunstein made on April 13th, admitting that the Company had realized a $2 billion loss on the derivatives – with additional significant loss likely. Dimon concluded by stating that the derivative bets were "grievous mistakes, [that] were self inflicted, we were accountable and we happened to violate our own standards and principles."

As a result of this disclosure, the market price of JPMorgan's common stock fell from $40.74 per share at the market close on Thursday, May 10, 2012, to $36.96 per share on May 11, 2012, falling more than 9% on extraordinary volume of 217 million shares. Shares of Company stock closed at $35.79 per share on Monday, May 14, 2012, also on extraordinary volume, wiping out more than $18.8 billion in market capitalization.

## ARGUMENT

### POINT I

#### CONSOLIDATION IS APPROPRIATE

Rule 42(a) of the Federal Rules of Civil Procedure provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions, it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). Rule 42 of the Federal Rules of Civil Procedure allows for the consolidation of actions involving common questions of law or fact. Mr. Constantinou asks this Court to consolidate the Actions, as well as any other action now pending or hereafter filed in or transferred to this Judicial District as a class action on behalf of purchasers or acquirors of

4

JPMorgan securities which arise out of the same facts as alleged in the Actions, and allege violations of Section 10(b) and/or 20(a) of the Exchange Act.

The Actions are ideally suited for consolidation pursuant to Rule 42, since they present virtually identical claims for relief based upon a single course of conduct, as described above. Since the Actions present similar issues of law and fact, consolidation of the Actions promotes judicial economy by streamlining and simplifying pre-trial and discovery motions and class certification issues, and by reducing the waste, confusion, and delay that could result from multiple trials. Where "the complaints are based on the same 'public statements and reports,' consolidation is appropriate if the actions present common questions of law and fact and if the parties will not be prejudiced." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (Buchwald, J.). Under Section 21D(a)(3)(B)(ii) of the Exchange Act, the Court must decide this motion to consolidate before determining the Lead Plaintiff.

## POINT II

### MR. CONSTANTINOU MEETS THE PSLRA'S REQUIREMENTS FOR APPOINTMENT AS LEAD PLAINTIFF

Mr. Constantinou should be appointed Lead Plaintiff of the Class because he has complied with all of the PSLRA's requirements for appointment as Lead Plaintiff, has demonstrated the largest financial interest of any plaintiff for the Class in the Actions, and otherwise meets the relevant requirements of Fed. R. Civ. P. 23 within the meaning of the Securities Act.

### A. The PSLRA's Procedural Requirements

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each action arising under the Securities Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). On May 14, 2012 the *Smith* Action was filed and notice was published via BUSINESS WIRE, indicating that the deadline for filing of lead plaintiff motions is July 13, 2012.

Second, the PSLRA provides that within 60 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §§ 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that --
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B. Mr. Constantinou Has Moved To Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §§ 78u-4(a)(3)(A) and (B) expires on July 13, 2012.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, Mr. Constantinou herein timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the Class.

Mr. Constantinou has duly signed a certification stating that he is willing to serve as representative plaintiff on behalf of the Class.  *See* Linkh Declaration, Exhibit B.  In addition, Movant has selected and retained experienced and competent counsel to represent him and the Class.  *See* résumés of Murray Frank and Finkelstein & Krinsk.  Linkh Declaration, Exhibits D and E.

Accordingly, Mr. Constantinou has satisfied the individual requirements of 15 U.S.C. §§ 78u-4(a)(3)(B) and is entitled to have his application for appointment as Lead Plaintiff and selection of counsel, as set forth herein, considered and approved by the Court.

### C. Mr. Constantinou Has The Largest Financial Interest In The Actions

In accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)), the Court shall appoint as Lead Plaintiff the Class member or members who represent the largest financial interest in the relief sought by purchasers or acquirors of JPMorgan securities during the Class Period.

As evidenced his signed certification, Mr. Constantinou purchased a total of 30,000 shares during the Class Period[3] (April 13, 2012 through May 10, 2012) inflated by the fraud, and

---

[3] Several of the Actions have designated class periods with earlier commencement dates, going back as far as 2010.  However, especially in light of Jamie Dimon's testimony before Congress on June 13, 2012 regarding JPMorgan's purported "hedging" practices, it is problematic whether JPMorgan management was aware of the risks at issue before April 2012. *See In re Centerline Holding Co. Sec. Litig.*, No. 08 Civ. 505, 2008 WL 1959799, at *3–4

7

has suffered $220,300 in losses as a result.[4]  *See* Linkh Declaration, Exhibit C.  Accordingly, Mr. Constantionou has a significant financial interest in the Actions.

Mr. Constantinou is not aware of any other plaintiff who purchased a greater number of damaged shares during the Class Period, and he otherwise satisfies the requirements of Rule 23. Therefore, Mr. Constantinou satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff of the Class in these Actions and should be appointed as Lead Plaintiff of the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### D.  Mr. Constantinou Otherwise Satisfies The Requirements Of Rule 23 Of The Federal Rules Of Civil Procedure

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the

---

(S.D.N.Y. May 5, 2008) (in appointing lead plaintiff, Judge Scheindlin declined to use a longer class period). Enlargement of the class periods in other filings thus appear to be principally tethered to strategic considerations as opposed to any plausibly actionable misstatements or omissions by Defendants. *Cf.*, fn 1, above.

[4] Mr. Constantinou purchased 10,000 shares on April 13, 2012 at $43.59 per share, and 20,000 shares on May 9, 2012 at $40.40 per share; the 30,000 shares were purchased for a total of $1,243,900.  He sold all 30,000 shares on June 1, 2012 at $32.05 per share.  According to Section 21D(e)(2) of the PSLRA:

> In any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the **purchase or sale price paid or received**, as appropriate, by the plaintiff for the security and **the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.**  [Emphasis added.]

The mean trading price between May 11, 2012 and June 1, 2012 is $34.12.  Accordingly, Mr. Constantinou's losses are $220,300.  See Linkh Declaration, Ex. C.

requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"Of the four criteria of Rule 23(a) . . . only two — typicality and adequacy — directly address the personal characteristics of the class representative." *Seidel v. Noah Educ. Holdings Ltd.*, Nos. 08 Civ. 9203(RJS), 2009 WL 700782, at *2 (S.D.N.Y. Mar. 9, 2009) (Sullivan, J.). Consequently, in deciding a motion to appoint a lead plaintiff, the Court shall limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.

Mr. Constantinou satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff of the Class. Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. "Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007). However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. Instead, "the typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members." *Janbay v. Canadian Solar, Inc.,* 272 F.R.D. 112 (S.D.N.Y. 2010) (Sweet, J.).

9

Mr. Constantinou seeks to represent a class of all purchasers and acquirers of JPMorgan securities during the Class Period who have identical, non-competing, and non-conflicting interests.  Mr. Constantinou satisfies the typicality requirement because he:  (i) purchased or acquired JPMorgan securities during the Class Period; and (ii) suffered damages thereby.  Thus, typicality is satisfied since the claims asserted by Mr. Constantinou "arise[]  from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings Ltd. Sec. Litig.,* 574 F.3d 29, 35 (2d Cir. 2009).

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class."  The standard for adequacy of representation under Rule 23 (a)(4) is met by:  (1) the absence of potential conflict between the named plaintiff and the class members, and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation.  *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,* 222 F.3d 52, 60 (2d Cir. 2000).

Here, as evidenced by the injury suffered by Mr. Constantinou, who purchased or acquired JPMorgan securities during the Class Period, Mr. Constantinou's interests are clearly aligned with other Class members, and there is no evidence of any antagonism between Mr. Constantinou's interests and those of the other Class members.  In addition, as shown below, Mr. Constantinou's proposed Co-Lead Counsel is highly qualified, experienced, and able to conduct this complex litigation in a professional manner.  Thus, Mr. Constantinou *prima facie* satisfies the commonality, typicality, and adequacy requirements of Rule 23.

Clearly, Mr. Constantinou satisfies all prongs of the Securities Act's prerequisites for appointment as Lead Plaintiff of the Class in these Actions pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

## POINT IV

### MR. CONSTANTINOU'S CHOICE OF
### CO-LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), a proposed lead plaintiff shall, subject to court approval, select and retain counsel to represent the class. In that regard, Mr. Constantinou has selected and retained the firms of Murray Frank and Finkselstein Krinsk to serve as Co-Lead Counsel for the Class. Murray Frank and Finkelstein & Krinsk both have extensive experience in successfully prosecuting complex securities actions and have frequently appeared in major actions in this and other courts. *See* résumés of Murray Frank and Finkelstein & Krinsk, attached to the Linkh Declaration as Exhibits D and E.[5]

Because there is nothing to suggest that Mr. Constantinou or his choice of counsel will not fairly and adequately represent the Class, or that Mr. Constantinou is subject to unique defenses - which is the only evidence that can rebut the presumption of adequacy under the Act - this Court should appoint Mr. Constantinou as Lead Plaintiff of the Class and approve his selection of Murray Frank and Finkelstein & Krinsk as Co-Lead Counsel for the Class.

## CONCLUSION

Mr. Constantinou has timely moved to be appointed Lead Plaintiff of the Class, has the largest financial interest submitted by a movant in the relief sought by the Class, and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Accordingly, the Actions should be consolidated, Mr. Constantinou should be appointed Lead Plaintiff of the Class, and his selection of Murray Frank LLP and Finkelstein & Krinsk LLP to serve as Co-Lead

---

[5] Proposed Co-Lead counsel also represent Saratoga Advantage Trust, Financial Services Portfolio, the initial institutional investor to file a complaint against Defendants. Saratoga defers to the motion of Mr. Constantinou notwithstanding his status as an individual public investor, believing he will properly represent the Class.

Counsel for the Class should be approved by the Court.

DATED: July 13, 2012
New York, New York

                        **MURRAY FRANK LLP**

                          /s/Brian P. Murray
                        Brian P. Murray (BM 9954)
                        bmurray@murrayfrank.com
                        Gregory B. Linkh (GL 0477)
                        glinkh@murrayfrank.com
                        275 Madison Avenue, Suite 801
                        New York, New York  10016-1101
                        Telephone:   (212) 681-1818
                        Facsimile:    (212) 682-1892

                        Jeffrey R. Krinsk
                        jrk@classactionlaw.com
                        Mark L. Knutson
                        mlk@classactionlaw.com
                        William R. Restis
                        wrr@classactionlaw.com
                        **FINKELSTEIN & KRINSK, LLP**
                        501 W. Broadway, Suite 1250
                        San Diego, CA 92101
                        Telephone: (619) 238-1333
                        Facsimile:  (619) 238-5425

                        *Attorneys for Anthony Constantinou*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of July, 2012, a true and correct copy of the foregoing document was served by CM/ECF to the parties in the above-captioned actions via the Court's CM/ECF system.

/s/ Gregory B. Linkh
Gregory B. Linkh
