# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

April 10, 2015

Via ECF

The Honorable George B. Daniels,
   Daniel Patrick Moynihan United States Courthouse,
      500 Pearl Street,
         New York, New York 10007-1312.

         Re:   *In re JPMorgan Chase & Co. Sec. Litig.*, No. 1:12-cv-03852-GBD (S.D.N.Y.): Response to Plaintiffs' March 31, 2015 Letter

Dear Judge Daniels:

    I write on behalf of defendants in response to plaintiffs' March 31, 2015 letter enclosing the Supreme Court's recent decision in *Omnicare, Inc.* v. *Laborers District Counsel Construction Industry Pension Fund*, 2015 WL 1291916 (Mar. 24, 2015), and its summary disposition of *Freidus* v. *ING Groep*, No. 13-1505 (Mar. 30, 2015). These decisions have no bearing on the fundamental flaws in plaintiffs' request to amend their complaint in order to re-assert a claim under Section 10(b) of the Securities Exchange Act of 1934 based on a statement made during a press interview in which JPMorgan's Chief Investment Office ("CIO"), which suffered the trading losses at issue in this action, never was mentioned. *See In re JPMorgan Chase & Co. Sec. Litig.*, 2014 WL 1297446, at *6 n.3 (S.D.N.Y. Mar. 31, 2014) (previously rejecting Section 10(b) claim based on exact same statement).

    In *Omnicare*, the Supreme Court clarified the pleading standard for claims under Section 11 of the Securities Act of 1933 based on statements of opinion in registration statements. To plead that a statement of opinion is false, the Court held that a plaintiff must allege that the issuer did not actually hold the stated belief. 2015 WL 1291916, at *6-7. Alternatively, "if a registration statement omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself, then §11's omissions clause creates liability." *Id.* at *8. In *Freidus*, which also involved claims under Section 11, the Supreme Court vacated a summary order of the Second Circuit and remanded the case for reconsideration in light of *Omnicare*.

    In their proposed amended complaint, plaintiffs once again attempt to state a Section 10(b) claim based on a statement by JPMorgan's Chairman and CEO, James

The Honorable George B. Daniels                                                                      -2-

Dimon, during a February 13, 2012 interview on *Fox Business News*. In a lengthy response to a reporter's question about what Mr. Dimon thought about the then-proposed Volcker Rule, Mr. Dimon said that "we don't make huge bets." (Proposed Third Am. Compl. ("PTAC") ¶ 278.) Plaintiffs argue that *Omnicare* shows that Mr. Dimon's statement was not an opinion or, if it was, that they adequately allege that the opinion was false or misleading. (Pls.' Ltr. at 1.) Plaintiffs are incorrect, but this Court need not even consider the impact of *Omnicare* because plaintiffs' proposed Section 10(b) claim based on Mr. Dimon's statement fails for a more fundamental reason, regardless of whether his statement was an opinion.

As defendants' opposition to plaintiffs' motion shows (Dkt. No. 135 at 13-14), by using ellipses to omit large portions of Mr. Dimon's 400-word response to the reporter's question, plaintiffs take Mr. Dimon's "we don't make huge bets" statement entirely out of context in a way that is affirmatively misleading. When Mr. Dimon's response is read in its entirety, it is clear that his statement referred not to JPMorgan as a whole or to JPMorgan's CIO, but to the market-making activities of JPMorgan's Investment Bank, which indisputably are not at issue in this case:

> Francis: A lot of people wanted me to ask you about the Volker Rule.
>
> Dimon: Yeah.
>
> Francis: Umm, I know you wrote comments on how it should be different. What do you think?
>
> Dimon: So, uh, so, there are two parts. ***The part where they said no proprietary trading, we're fine with.*** [We've never had an issue with that. The part about market making is the part that everyone's writing long issues about, like being an aggressive market maker. We are a store. Okay. We, when you come to JP Morgan, we give you great prices in corporate bonds, you know, FX, interest rates. Most of the business is driven by clients, and we have the widest and deepest capital markets in the world. What that means is, that if you're selling, you get a better price; or if you're buying, you get a better price. Spreads have come down. So that spread is coming down is very good for the buyer or seller. Who's the buyer or seller? Retirees, pensions, state plans, veterans, your mother, my parents. That's a wonderful thing where the cost of that's come down dramatically, saving a lot of money. Just like Walmart saves people a lot of money, or Costco. So I just hope we don't throw the baby out with the bath water. And, you know, Paul Volcker by his own admission, has said that he doesn't understand capital markets. Well, honestly, he's proven that to me. And uh, you know, we've got to be very

The Honorable George B. Daniels -3-

> very careful that we don't take the best, widest, deepest and most transparent capital markets, and because there were some flaws, destroy it. And we're not going to destroy it, but it's just simply going to go overseas. And so, remember, when the client calls up JP Morgan, if we don't give them the best price, we don't get the business. But the best price is a huge benefit for them. That's not an insult,] ***and we don't make huge bets***. So, I understand the goal to make sure that these companies don't take huge bets on their balance sheets, but market making—just like these stores down the street—when they buy a lot of polka dot dresses, they hope they're going to sell. They're making a judgment call. They may be wrong. So, protecting the system, I agree with. But, but, you know, starting to talk about the intent—I tell every trader, we're going to have to have a lawyer, compliance officer, doctor to see what their testosterone levels are, and uh, uh, shrink. What was your intent? No, we're going to make markets for our clients to give them the best products, the best services, the best research, and the best prices. That's a good thing, in spite of what Paul Volcker says.

(Dkt. No. 136-1 (emphasis added).) Plaintiffs seek to assert a claim based on the language that is bolded and italicized above. (*See* PTAC ¶ 243.) In an effort to disguise that Mr. Dimon was talking about JPMorgan's market-making activities, plaintiffs omit from their quotations of Mr. Dimon's response all of the bracketed language between the two bolded and italicized phrases. (Dkt. No. 136-12.)

When read in its entirety, Mr. Dimon's actual response fails to give rise to a claim under Section 10(b). He never once mentions JPMorgan's CIO, which plaintiffs do not contend was engaged in market making. And nothing in Mr. Dimon's statement suggests that he was referring to JPMorgan as a whole, as plaintiffs assert in their letter. (Pls.' Ltr. at 1.) He clearly was talking about market making. Thus, regardless of whether Mr. Dimon's "huge bets" statement was a statement of opinion or of fact, plaintiffs cannot state a claim based on that statement because their allegations directed at CIO and its trading have absolutely nothing to do with Mr. Dimon's statement about JPMorgan's market-making activities and, therefore, cannot show that this statement was false or misleading or made with scienter, as required to plead a Section 10(b) claim.

To the extent that the Court elects to reach the issue, Mr. Dimon's statement constitutes an opinion. Under Second Circuit precedent, statements that reflect judgment about how to "balance certain risks" are statements of opinion. *See Freeman Grp.* v. *RBS Grp.*, 540 F. App'x 33, 37 (2d Cir. 2013); *see also* Dkt. No. 135 at 20 (collecting cases). In arguing that Mr. Dimon's statement concerns CIO, plaintiffs imply that Mr. Dimon expressed a view as to whether CIO's trading was a hedge or high-risk proprietary trading. (Dkt. No. 127 at 5-6, 16.) It is established in this Circuit that such an

The Honorable George B. Daniels                                                                                                    -4-

"inherently subjective" statement—concerning what is a hedge, what is a proprietary trade, and what is a "bet"—is an opinion. *E.g., Fait* v. *Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011). *Omnicare* did not overrule that precedent.[1] Indeed, *Omnicare* confirmed that subjective statements, incapable of "complete demonstration," are opinions. 2015 WL 1291916, at *5.

Mr. Dimon's subjective statement about "huge bets" is an opinion even though, like many opinions expressed in ordinary conversation, he did not specifically preface the statement with the words "I think" or "I believe." Contrary to plaintiffs' contention (Pls.' Ltr. at 1), *Omnicare* did not create a formalistic new requirement that statements immediately be prefaced with the magic words "I think" or "I believe" to be considered opinions. *See* 2015 WL 1291916, at *5-6. Moreover, although Mr. Dimon did not himself use the words "I think," he provided his answer in response to the following question from the *Fox Business News* reporter: "I know you wrote comments on how [the Volcker Rule] should be different. What do you think?" (Dkt. No. 136-1.)

In analyzing a claim under Section 11, which imposes strict liability for false statements in a registration statement that "the reasonable investor expects has been carefully wordsmithed to comply with the law," *id.* at *8, the Court had no occasion to consider the myriad ways in which opinions might be expressed in the broad range of communications that potentially can give rise to a claim under Section 10(b).[2] Indeed, there is an inherent difference between registration statements prepared by lawyers and off-the-cuff statements like Mr. Dimon's response to a reporter's question that ended with, "What do you think?" (Dkt. No. 136-1.) That question, which invited Mr. Dimon to provide an opinion, underscores the subjective nature of Mr. Dimon's response.

If the Court reaches the issue, plaintiffs fail to state a claim under *Omnicare*. Even though he was not talking about CIO, the information that Mr. Dimon allegedly was provided about CIO's trading before the *Fox Business News* interview does not show that Mr. Dimon could not honestly have believed that CIO was hedging risk, not making "huge bets." (*See* Dkt. No. 135 at 21-25.) Plaintiffs also fail to plead that Mr. Dimon omitted facts showing that he "lacked the basis for making [the] statement[] that a reasonable investor would expect." *Omnicare*, 2015 WL 1291916, at *12. The Supreme Court emphasized that an opinion must be read in context, "in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information." *Id.* at *9;

---

[1] *Omnicare* overruled *Fait* insofar as it held that liability for an opinion in a registration statement exists "'only to the extent that the statement was both objectively false and disbelieved by the defendant.'" (Pls.' Ltr. at 2 (quoting *Freidus*).) The Supreme Court vacated *Freidus* for the same reason.

[2] *See Omnicare*, 2015 WL 1291916, at *9 ("Registration statements as a class are formal documents, filed with the SEC as a legal prerequisite for selling securities to the public. Investors do not, and are right not to, expect opinions contained in those statements to reflect baseless, off-the-cuff judgments, of the kind that an individual might communicate in daily life.").

The Honorable George B. Daniels                                                                -5-

*see also id.* at *8 n.8. Mr. Dimon made a passing comment about "huge bets" in the middle of a long and colloquial response to a question about his views posed during a television interview. A reasonable investor would not expect Mr. Dimon to have conducted a rigorous investigation before making such a statement in a news interview, even if such an investigation might precede the inclusion of such a statement in a registration statement pursuant to which securities will be sold. Mr. Dimon also omitted no facts about CIO or the proposed Volcker Rule necessary to make his statement not misleading to a reasonable investor, particularly since his statement made no mention of CIO. That is especially true when JPMorgan's extensive disclosures about its activities in relation to that proposed rule are considered. (*See* Dkt. No. 135 at 16-18.)

Finally, to state a claim under Section 10(b), plaintiffs must plead particularized facts giving rise to a strong inference that Mr. Dimon acted with scienter. Nothing in *Omnicare*, which concerned strict liability under Section 11, changed that fundamental pleading requirement. Plaintiffs fail to plead particularized facts showing that Mr. Dimon did not honestly believe his opinion. (Dkt. No. 135 at 20-25.) Plaintiffs also fail to plead facts giving rise to a strong inference that Mr. Dimon knew or recklessly disregarded that he "lacked the basis for making [the] statement[] that a reasonable investor would expect." *Cf. Omnicare*, 2015 WL 1291916, at *12; Dkt. No. 135 at 18-19, 20-25.

Respectfully submitted,

Richard C. Pepperman, II

cc:     *All Counsel* (via ECF)