USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 14 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE JPMORGAN CHASE & CO.
SECURITIES LITIGATION

Master File No. 1:12-cv-03852-GBD

### REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The United States District Court for the Southern District of New York presents its compliments to the judicial authorities of France and requests assistance in obtaining oral testimony from a non-party witness located in France to be used in a civil proceeding before this Court.

This request is made pursuant to, and in conformity with, Chapter I of the *Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters* (the "Hague Convention"), to which both the United States and France are parties.

The Court asserts that the evidence sought through the present Request is directly relevant to the issues in dispute and is not discovery within the meaning of Article 23 of the Hague Convention, that is, merely testimony intended to lead to relevant evidence for trial. The evidence sought has a direct link with plaintiffs' allegations. This Request fully complies with French reservations under the Hague Convention.

The particulars of this Hague Evidence Request are as follows:

## SECTION I

1. **Sender:**

   John Rizio-Hamilton, Esq.
   BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
   1285 Avenue of the Americas, 38th Floor
   New York, NY 10019
   United States of America

   *As Authorized by:*
   Honorable George B. Daniels
   United States District Judge
   United States District Court for the Southern District of New York
   Daniel Patrick Moynihan United States Courthouse
   500 Pearl Street, Room 660
   New York, NY 10007-1312
   United States of America

2. **Central Authority of the Requested State:**

   Bureau de l'entraide judiciaire international,
   Direction des affaires civiles et du sceau,
   Ministère de la Justice,
   13, place Vendôme,
   75042 Paris Cedex 01,
   France

3. **Person to Whom the Executed Request Is to Be Returned:**

   John Rizio-Hamilton, Esq.
   BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
   1285 Avenue of the Americas, 38th Floor
   New York, NY 10019
   United States of America
   Telephone: (212) 554-1400
   Fax: (212) 554-1444
   Email: johnr@blbglaw.com

4. **Specification of Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request:**

   The requesting authority requests that a response be provided as soon as possible, in

   order to ensure that evidence may be obtained before the deadline for fact discovery to be

   completed, currently set for September 30, 2015.

607135955.1

2

Washington, D.C. 20006
United States of America
Telephone: (202) 956-7500
Fax: (202) 956-7056
Email: libowd@sullcrom.com
Email: viapianoc@sullcrom.com

Richard C. Pepperman, II
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
United States of America
Tel.: (212) 558-4000
Fax: (212) 291-9113
Email: peppermanr@sullcrom.com

## 7. Nature and Purpose of the Proceedings and Summary of the Facts (Article 3(c))

### a. Nature and Purpose of the Claims

The above-captioned action is a civil action alleging claims under the anti-fraud

provisions of the U.S. Securities Exchange Act of 1934 on behalf of all persons who acquired

common stock of Defendant JPMorgan Chase & Co. ("JPMorgan" or the "Bank") between April

13, 2012 and May 21, 2012. This action arises out of the so-called "London whale" events of

2012, in which JPMorgan lost billions of dollars as a result of secret, high-risk trading in the

credit-derivatives market. The pending claims in the action were sustained by the United States

District Court for the Southern District of New York over Defendants' motion to dismiss in a

Memorandum Decision and Order dated March 31, 2014.

### b. Plaintiffs' Allegations

#### (i) Plaintiffs' Claims Generally

On April 12, 2013, Lead Plaintiffs filed their Second Amended Consolidated Securities

Class Action Complaint (the "SAC"). The SAC alleges that the Defendants made materially false

and misleading statements and failed to disclose material facts concerning the high-risk trading

5

and losses generated by JPMorgan Chase's Chief Investment Office ("CIO") in its synthetic credit portfolio ("SCP"). The synthetic-derivatives trading at issue in this action was conducted by the London branch of JPMorgan Chase Bank, a subsidiary of Defendant JPMorgan. Bruno Iksil worked as a CIO trader in the London branch of JPMorgan Chase Bank during the relevant time period and was the principal trader responsible for the trades at issue in this action. Mr. Iksil was also directly involved in the London branch's reporting of information about the SCP's trading, risks, and losses to JPMorgan's senior management in New York. As a result of the enormous positions he took in high-risk, illiquid credit derivatives, market participants and the financial press referred to Mr. Iksil as the "London whale."

The SAC alleges that Defendants JPMorgan, Dimon, and Braunstein violated the U.S. federal securities laws by making materially false and misleading statements and omissions to investors about the trading conducted by Mr. Iksil and the risks and losses it generated. Specifically, during an April 13, 2012 conference call held in the wake of news reports about Mr. Iksil and the SCP trades, Defendants reassured investors that the trades were not a concern, stating that the trades were long-term "hedges" that served to reduce JPMorgan's risk and were closely supervised by its regulators.

On that conference call, Defendants told investors that the SCP's trades were conservative "hedges" that were designed to "keep the Company effectively balanced from a risk standpoint." According to Defendants, the SCP trades served to reduce risk by protecting the Bank against unlikely "stress loss" or "tail risk" macro events that could harm the Company in the event of a severe market downturn. Defendants further reassured investors concerning the purportedly conservative nature of the trades by stressing that all of the SCP's investment "decisions are made on a very long-term basis" and were "put on pursuant to the risk

management at the firm-wide level." Indeed, Defendant Dimon dismissed investor concerns over Mr. Iksil's trades as a "complete tempest in a teapot."

Defendants also represented that the CIO, within which the SCP was housed, carried a low "value at risk" or "VaR," a metric used by regulators and investors to measure the amount of money the CIO's trades could lose on a given day. Specifically, in a disclosure document filed on April 13, 2012, JPMorgan reported a VaR of $67 million, reflecting that the CIO's risk had actually been reduced from the prior quarter, when JPMorgan reported a VaR of $69 million, thus reassuring investors that the trades were not a concern.

Defendant Braunstein invoked the federal bank regulators' supervision of the SCP in order to assuage investor concerns about the SCP, telling investors that JPMorgan disclosed the trades to its regulators on a "regular and recurring basis," and thus the SCP's positions were "fully transparent" to the regulators, who had full "access" to them at any time.

The SAC alleges that these statements were false and misleading when made. Contrary to Defendants' statements that the SCP's trades were a conservative hedge, an OCC official who reviewed the SCP concluded that the SCP reflected "classic prop[rietary] trading," as all of the trades were conducted to generate profit for JPMorgan. As another OCC official put it, the SCP amounted to a "make believe voodoo magic 'composite hedge.'" The PSI likewise concluded that the SCP was a "high risk proprietary trading operation that had no place at a federally insured bank." Nor were concerns about the SCP a "tempest in a teapot." By the time of JPMorgan's April 13 call, the SCP allegedly had caused over $1.2 billion in losses, including a one-day $400 million loss; and had breached every risk limit applicable to it, with over 330 risk-limit breaches in the first quarter of 2012. Moreover, the SCP's positions were so large (over $157 billion notional), illiquid, and concentrated that they would take weeks or months to exit.

Furthermore, the Bank's VaR was higher than represented to investors in its SEC filings. Before its April 13 conference call with investors, JPMorgan had manipulated the CIO VaR model, which artificially cut the unit's reported risk in half—allowing JPMorgan to report a CIO VaR of $67 million when the VaR was actually $129 million.

Finally, contrary to JPMorgan's assurances that the SCP's positions were "fully transparent" and regularly reviewed by its regulators, JPMorgan concealed the SCP's trades from its regulators. The U.S. Senate Permanent Subcommittee on Investigations ("PSI") Majority and Minority Staff Report titled "JPMorgan Chase Whale Trades: A Case History of Derivatives Risks and Abuses" issued in conjunction with the PSI's March 15, 2013 hearing (the "Senate Report") concluded that JPMorgan had in fact "[i]ncreased [r]isk [w]ithout [n]otice to [r]egulators," "dodged OCC oversight of the [SCP] for years," and "disclosed the extent and high risk nature of the portfolio to its regulators only after it attracted media attention."

Due to the impending deadline for filing its first-quarter quarterly report, the Bank was ultimately forced to make a disclosure concerning the SCP. On May 10, 2012, Defendants arranged a previously unannounced conference call in which JPMorgan disclosed that it had lost nearly $2 billion on the CIO's trades and that it was restating the VaR for the CIO that it had reported on April 13. These and other disclosures concerning the CIO and the SCP are alleged to have caused JPMorgan's stock to decline significantly, resulting in substantial damages to Plaintiffs and the class.

### (ii)    Plaintiffs' Claims as They Relate to Mr. Iksil

Mr. Iksil's testimony is necessary as it relates to the central issues relevant to the claims and defenses in this action. As noted above, Mr. Iksil was the principal trader responsible for the SCP's massive credit-derivatives trading and enormous losses, and he was directly involved in providing information to JPMorgan's senior management in New York, who made the allegedly

false statements to investors about the SCP's trading, risks, and losses. Thus, Mr. Iksil has knowledge regarding the SCP's strategy, trading, risks, and losses during the relevant time period, as well as the information about the SCP's trading, risks, and losses that was provided to the persons responsible for JPMorgan's statements to regulators and investors about these matters. His testimony is of central importance to Lead Plaintiffs' claims that—contrary to Defendants' public statements—the SCP was not a hedge and was not fully transparent to JPMorgan's regulators.

### (iii)    Summary of Defense

In their motion to dismiss the SAC, Defendants argued that Lead Plaintiffs did not adequately allege that Defendants made material false statements or that Defendants acted with the required state of mind, i.e., knowledge or recklessness with respect to the falsity of their statements. After the Court denied the motion to dismiss with respect to the claims that remain pending, Defendants filed an Answer in which they denied that they knowingly or recklessly made material false statements and asserted various affirmative defenses, including that they acted in good faith and exercised reasonable care and that their alleged false statements did not cause any damages to Lead Plaintiffs and the class of investors in JPMorgan stock.

### 8.    Evidence to Be Obtained and Purpose

This Court requests that, pursuant to the Hague Convention, the appropriate judicial authority in France compel the appearance of Mr. Bruno Iksil to testify under oath.

The witness from whom the testimony is sought resides in the Republic of France and is, upon information and belief, neither domiciled nor doing business in the United States. Thus, this Court cannot directly compel him to provide the requested testimony.

More particularly, Mr. Iksil's sworn testimony pursuant to this Letter of Request is admissible evidence under United States law, specifically, Federal Rule of Civil Procedure 28(b)

and Federal Rule of Evidence 804, and may be offered at trial in the above-captioned case.

Plaintiffs seek Mr. Iksil's testimony regarding multiple issues relevant to the claims and defenses

in this case, specifically including the development and implementation of the SCP's trading

strategies; the timing, size, risk, liquidity, and performance of the SCP's trading; the SCP's

actual and projected risk exposures and losses; and the CIO's reporting of information

concerning the SCP's trading and losses to JPMorgan's senior management.

While this Court expresses no view as to the merits or otherwise of the Complaint,

Answer, or any related motions in the above-captioned case, it believes that the evidence sought

here will be relevant to and either probative or disprobative of material facts relevant to the

Complaint, the Answer, and any motions in the case.

**9.      Identity and Address of the Person to Be Examined (Article 3(e))**

Mr. Bruno Iksil
C/O
JEAN-FRANCOIS DAVENE
WENNER SCP
70, boulevard de Courcelles
75017 Paris, France
Telephone: +33 (0)1 42 66 89 00
Fax: +33 (0)1 42 66 89 01

*Represented by:*
JEAN-FRANCOIS DAVENE
WENNER SCP
70, boulevard de Courcelles
75017 Paris, France
Telephone: +33 (0)1 42 66 89 00
Fax: +33 (0)1 42 66 89 01

**10.     Statement of the Subject Matter About Which the Person Will Be Examined (article 3(f))**

Accordingly, the Court requests that questioning be permitted of the witness concerning

the following topics:

1.      His employment history and his responsibilities at JPMorgan during the relevant time period, with the exception that no questions will be asked about the facts and circumstances of Mr. Iksil's termination from JPMorgan, the process for estimating or valuing the positions in the SCP or whether the estimation or valuation of any of the positions in the SCP were correct.

2.      The CIO's trading, risks, and losses in the SCP during the relevant time period, with the exception that no questions will be asked about the process for estimating or valuing the positions in the SCP or whether the estimation or valuation of any of the positions in the SCP were correct. This topic includes but is not limited to:

      a.      the development, implementation, and approval of the SCP's trading strategies;

      b.      the timing, size, risk, liquidity, and performance of the SCP's trading; and

      c.      any risks the SCP's trading was designed to hedge or otherwise protect against.

3.      The policies, practices, and procedures of the CIO, or of JPMorgan related to the CIO, concerning hedging or managing risk in connection with derivatives, but not those related to accounting or the process for the estimation or valuation of positions.

4.      The CIO's reporting of information concerning the SCP to JPMorgan's senior management, .with the exception that no questions will be asked about the process for estimating or valuing the positions in the SCP or whether the estimation or valuation of any of the positions in the SCP were correct

5.      JPMorgan's internal investigation of the SCP's trading, with the understanding that no questions will be asked about any internal investigation into the process for estimating or

11

valuing the positions in the SCP or whether the estimation or valuation of any of the positions in the SCP were correct.

**11.    Documents and Other Evidence to Be Examined (Article 3(g))**

None.

**12.    Requirement That the Evidence Be Given on Oath or Affirmation (Article 3(h))**

This Court requests that Mr. Iksil's testimony be taken under oath or affirmation.

Pursuant to United States Federal Rule of Evidence 603, this Court requests that the witness, Mr. Iksil, be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with the duty to do so.

Specifically, the Court requests that the duly appointed official require the witness to provide his deposition testimony under the following oath (or affirmation): "I, Bruno Iksil, swear (or affirm) that the testimony I am about to give is the truth, the whole truth, and nothing but the truth."

**13.    Special Procedures or Method to Be Followed (Article 3(i))**

The examination shall be taken under the Federal Rules of Civil Procedure of the United States, except to the extent such procedure is incompatible with the internal laws of France. This Court requests: (1) that the examination be taken orally; (2) that the examination be taken before a commercial stenographer and audio recorder selected by Lead Plaintiffs; (3) that the stenographer be permitted to record the examination by audio means; (4) that the stenographer be allowed to record a verbatim transcript of the examination; (5) that the examination be conducted with the assistance of an interpreter selected by Lead Plaintiffs; (6) that, if the examination is conducted through an interpreter, verbatim transcripts of the proceeding in both English and French be permitted; (7) that counsel for Lead Plaintiffs and counsel for Defendants be notified as soon as possible of the date, time, and place of the examination, along with any other pertinent information, including what authority has been appointed to preside over the deposition; (8) that

counsel for Lead Plaintiffs and counsel for Defendants be permitted to question Mr. Iksil regarding the subject matter described in Section 10 of this Request; (9) that 7.0 hours be allotted for the examination; (10) that the examination be closed to the public; and (11) that the witness be examined as soon as possible.

This Court further requests that (1) counsel for the parties and Mr. Iksil be permitted to object to the form of questions just as they would in a deposition taken in the United States pursuant to the Federal Rules of Civil Procedure; (2) any such objections be recorded by the stenographer; and (3) to the extent reasonably necessary to avoid the disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, counsel be permitted to direct Mr. Iksil not to answer.

Pursuant to the Stipulation and Modified Protective Order entered in this action by the U.S. District Court for the Southern District of New York on May 28, 2015, the questioning of the witness, the witness's testimony, and any transcript or audio recording of the questioning and testimony will be designated as "Confidential" or "Attorneys' Eyes Only" in accordance with the Stipulation and Modified Protective Order.

If the evidence cannot be taken according to some or all of the procedures described above, this Court requests that it be taken in such manner as provided by French law for the formal taking of testimonial evidence.

When required, this Court will provide similar assistance as requested herein to the appropriate judicial authorities of France.

**14.    Request for Notification of the Time and Place for the Execution of the Request and Identity and Address of Any Person to Be Notified (Article 7)**

Please send notice of the time and place for execution of this Request to:

Clerk of the United States District Court
    for the Southern District of New York

Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007
United States of America

John Rizio-Hamilton, Esq.
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1285 Avenue of the Americas
38th Floor
New York, NY 10019
United States of America
Telephone: (212) 554-1400
Fax: (212) 554-1444
Email: johnr@blbglaw.com

Christopher M. Viapiano, Esq.
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
United States of America
Telephone: (202) 956-7500
Fax: (202) 956-7056
Email: viapianoc@sullcrom.com

**15.    Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request (Article 8)**

Yes.

**16.    Specification of Privilege or Duty to Refuse to Give Evidence Under the Law of the State of Origin (Article 11)**

Under the laws of the United States, a witness has a privilege to refuse to give evidence if

to do so would disclose a confidential communication between the witness and his attorney that

was communicated specifically for the purpose of obtaining legal advice and which privilege has

not been waived. United States law also recognizes a privilege against criminal self-

incrimination. Other limited privileges on grounds not applicable here also exist, such as

communications between doctors and patients, husband and wife, and clergy and penitent.

Certain limited immunities are also recognized outside the strict definition of privilege, such as

the limited protection of work product created by attorneys during or in anticipation of litigation.

**17.    Reimbursement (Article 14)**

The fees and costs incurred in the execution of this Request which are reimbursable under

the second paragraph of Article 14 or under Article 26 of the Hague Convention will be borne by

the above-named Plaintiffs.

Date of Request:____SEP 14 2015____, 2015
                    Month, Day

SIGNATURE AND SEAL OF THE REQUESTING AUTHORITY

(Affix seal here.)

                              _George B. Daniels_
                              Honorable George B. Daniels
                              United States District Judge
                              United States District Court for the
                              Southern District of New York

607135955.1                        15

TRIBUNAL DE DISTRICT DES ÉTATS-UNIS
DISTRICT SUD DE NEW YORK

IN RE JPMORGAN CHASE & CO. SECURITIES
LITIGATION

Fichier principal n° 1:12-cv-03852-GBD

## DEMANDE D'AIDE JUDICIAIRE INTERNATIONALE CONFORMÉMENT À LA CONVENTION DE LA HAYE DU 18 MARS 1970 RELATIVE À L'OBTENTION DE PREUVES À L'ÉTRANGER EN MATIÈRE CIVILE OU COMMERCIALE

Le Tribunal de district des États-Unis du District sud de New York présente ses compliments aux autorités judiciaires françaises et demande leur aide pour l'obtention du témoignage oral d'un tiers témoin résidant en France à utiliser dans une procédure civile devant ce Tribunal. La présente demande est faite conformément au Chapitre I de *la Convention de la Haye du 18 mars 1970 relative à l'obtention de preuves à l'étranger en matière civile ou commerciale* (la « Convention de la Haye »), à laquelle les États-Unis et la France sont partie.

Le tribunal affirme que le témoignage demandé par le biais de la présente Demande correspond directement aux problèmes qui font l'objet d'un litige et n'est pas un interrogatoire préalable dans le cadre de l'Article 23 de la Convention de la Haye, c'est-à-dire, uniquement un témoignage visant à apporter une preuve au procès. Le témoignage a un lien direct avec les allégations des plaignants. La présente Demande est pleinement conforme aux réserves françaises conformément à la Convention de la Haye.

Les détails de la présente Demande de témoignage conformément à la Convention de la Haye sont les suivants :

## SECTION I

1.     **Expéditeur :**

        Maître John Rizio-Hamilton
        BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
        1285 Avenue of the Americas, 38th Floor
        New York, NY 10019
        États-Unis d'Amérique

        *Autorisé par :*
        George B. Daniels
        Juge de district des États-Unis
        Le Tribunal de district des États-Unis du District sud de New York
        Daniel Patrick Moynihan Palais de justice des États-Unis
        500 Pearl Street, Room 660
        New York, NY 10007-1312
        États-Unis d'Amérique

2.     **Autorité centrale de l'État requis :**

        Bureau de l'entraide judiciaire international,
        Direction des affaires civiles et du sceau,
        Ministère de la Justice,
        13, place Vendôme,
        75042 Paris Cedex 01,
        France

3.     **Personne à qui la Demande signée doit être renvoyée :**

        Maître John Rizio-Hamilton.
        BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
        1285 Avenue of the Americas, 38th Floor
        New York, NY 10019
        États-Unis d'Amérique
        Téléphone : (212) 554-1400
        Fax : (212) 554-1444
        Courriel : johnr@blbglaw.com

4.     **Indication de la Date à laquelle l'Autorité requérante souhaite recevoir la Réponse à la Lettre de demande :**

    L'autorité requérante exige qu'une réponse soit envoyée dans les plus brefs délais, afin de

s'assurer que le témoignage puisse être obtenu avant l'échéance de l'enquête à réaliser, actuellement

prévue pour le 30 septembre 2015.

**SECTION II**

Conformément à l'Article 3 de la Convention de la Haye, le demandeur soussigné a l'honneur de

soumettre la demande suivante :

**5.    a.    Autorité judiciaire requérante (Article 3(a))**

George B. Daniels
Juge de district des États-Unis
Le Tribunal de district des États-Unis du District sud de New York
Daniel Patrick Moynihan Palais de justice des États-Unis
500 Pearl Street, Room 660
New York, NY 10007-1312
États-Unis d'Amérique

**b.    À l'Autorité compétente de la République française (Article 3(a))**

Bureau de l'entraide judiciaire international,
Direction des affaires civiles et du sceau,
Ministère de la Justice,
13, place Vendôme,
75042 Paris Cedex 01,
France

**c.    Nom de l'affaire et tout numéro d'identification**

*In re JPMorgan Chase & Co. Securities Litigation*, Fichier principal n° 1:12-cv-03852-GBD,
Tribunal de district des États-Unis du District sud de New York

**6.    Noms et adresses des Parties et de leurs Représentants dans l'affaire (Article 3(b))**

**a.    Demandeurs :**

Le Régime de retraite des professeurs en Arkansas, le Régime de retraite des employés dans
l'Ohio, Sjunde AP-Fonden et l'État de l'Oregon par et à travers le Trésorier de l'État de l'Oregon
au nom du Fonds commun des écoles et, avec le Conseil du régime de retraite public de l'Oregon,
au nom du Fonds de retraite public des employés de l'Oregon

*Représentés par :*

Maître Salvatore J. Graziano.
Maître John Rizio-Hamilton.
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1285 Avenue of the Americas

38th Floor
New York, NY 10019
États-Unis d'Amérique
Téléphone : (212) 554-1400
Fax : (212) 554-1444
Courriel : sgraziano@blbglaw.com
Courriel : johnr@blbglaw.com

Jay W. Eisenhofer.
Maître Daniel L. Berger.
Maître Jeffrey A. Almeida.
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
États-Unis d'Amérique
Téléphone : (646) 722-8505
Fax : (646) 722-8501
Courriel : jeisenhofer@gelaw.com
Courriel : dberger@gelaw.com
Courriel : jalmeida@gelaw.com

Maître David Kessler.
Maître Andrew L. Zivitz.
Maître Matthew L. Mustokoff.
Johnston de F. Whitman, Jr.
KESSLER TOPAZ MELTZER & CHECK LLP
2810 King of Prussia Road
Radnor, PA 19087
États-Unis d'Amérique
Tél. : (610) 667-7706
Fax : (610) 667-7056
Courriel : dkessler@ktmc.com
Courriel : azivitz@ktmc.com
Courriel : mmustokoff@ktmc.com
Courriel : jwhitman@ktmc.com

**b. Défendeurs**

JPMorgan Chase & Co., James Dimon, et Douglas Braunstein

*Représentés par :*

Maître Daryl A. Libow.
Maître Christopher M. Viapiano.
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700

Washington, D.C. 20006
États-Unis d'Amérique
Téléphone : (202) 956-7500
Fax : (202) 956-7056
Courriel : libowd@sullcrom.com
Courriel : viapianoc@sullcrom.com

Richard C. Pepperman, II
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
États-Unis d'Amérique
Tél. : (212) 558-4000
Fax : (212) 291-9113
Courriel : peppermanr@sullcrom.com

## 7.    Nature et objet de la Procédure et Résumé des faits (Article 3(c))

### a.    Nature et objet des Réclamations

La procédure susmentionnée est une procédure civile visant à émettre des réclamations conformément aux dispositions de lutte contre la fraude de la Loi américaine de 1934 relative à l'échange des valeurs mobilières au nom de toutes les personnes ayant acquis des actions ordinaires du Défendeur JPMorgan Chase & Co. (« JPMorgan » ou la « Banque ») entre le 13 avril 2012 et le 21 mai 2012. Ladite procédure fait suite à l'affaire dite de « la baleine de Londres » de 2012, au cours de laquelle JPMorgan a perdu des milliards de dollars à la suite de transactions secrètes et à haut risque sur le marché des dérivés de crédit. Les réclamations en attente dans la présente procédure ont été soutenues par le Tribunal de district des États-Unis du District sud de New York concernant la demande de rejet des Défendeurs dans une Ordonnance et une Décision judiciaire en date du 31 mars 2014.

### b.    Allégations des Demandeurs

#### (i)    Réclamations des Demandeurs de façon générale

Le 12 avril 2013, les Demandeurs principaux ont déposé leur deuxième Plainte en recours collectif modifiée et consolidée (la « SAC »). Selon la SAC, les Défendeurs ont fait d'importantes déclarations fausses ou trompeuses et n'ont pas divulgué les faits majeurs sur les transactions à haut risque et les pertes générées par le Service en charge des investissements de JPMorgan Chase (« CIO »)

dans son portefeuille de crédit synthétique (« SCP »). Les transactions de dérivés synthétiques en question
dans la présente procédure ont été réalisées par la succursale de Londres de la Banque JPMorgan Chase,
une filiale du Défendeur JPMorgan. Bruno Iksil a travaillé en tant que trader du CIO dans la succursale de
Londres de la Banque JPMorgan Chase au cours de la période concernée, il était le principal trader et était
responsable des transactions remises en question dans la présente procédure. M. Iksil était également
directement impliqué dans la communication des informations de la succursale de Londres concernant les
pertes, risques et transactions du SCP à la direction de JPMorgan à New York. À la suite des énormes
risques qu'il a pris, les dérivés de crédit non liquides, les participants du marché et la presse financière ont
désigné M. Iksil sous le nom de la « baleine de Londres ».

La SAC prétend que les Défendeurs JPMorgan, Dimon et Braunstein ont violé les lois fédérales
américaines relatives aux valeurs mobilières en faisant des déclarations sensiblement fausses et
trompeuses et des omission auprès des investisseurs concernant les transactions réalisées par M. Iksil et
les pertes et risques générés. Ainsi, au cours d'une conférence le 13 avril 2012 convoquée à la suite de la
publication de rapports sur M. Iksil et les transactions du SCP, les Défendeurs ont réaffirmé aux
investisseurs que les transactions n'étaient pas un problème, en déclarant que les négociations étaient des
« couvertures » à long terme permettant de réduire les risques pour JPMorgan et étaient surveillées de
près par ses régulateurs.

Lors de cette conférence, les Défendeurs ont déclaré aux investisseurs que les transactions du
SCP étaient des « couvertures » conçues pour « maintenir la Société dans un équilibre efficace du point de
vue de la gestion des risques. » Selon les Défendeurs, les transactions du SCP ont permis de réduire les
risques en protégeant la Banque contre les événements macroéconomiques de « risque extrême » ou
« perte due au stress » pouvant nuire à la Société en cas de récession importante du marché. Les
Défendeurs ont en outre réaffirmé aux investisseurs la nature prétendument conservatrice des transactions
en mettant l'accent sur le fait que les « décisions d'investissements du SCP sont prises à très long terme »
et étaient « appliquées conformément à la gestion des risques au niveau de l'ensemble de l'entreprise. En

effet, le Défendeur Dimon a jugé les préoccupations des investisseurs concernant les transactions de M. Iksil comme étant une « véritable tempête dans un verre d'eau ».

Les Défendeurs ont également déclaré que le CIO, dans lequel se trouvait le SCP, contenait une « faible valeur à risque » ou « VaR », une unité de mesure utilisée par les régulateurs et les investisseurs pour mesurer le montant que les transactions du CIO pourraient perdre un jour donné. Ainsi, dans un document d'information déposé le 13 avril 2012, JPMorgan a mentionné une VaR de 67 millions USD, démontrant ainsi que le risque du CIO était réellement réduit par rapport au trimestre précédent, lorsque JPMorgan affichait une VaR de 69 millions USD, ce qui rassurait les investisseurs sur le fait qu'il n'y avait pas d'inquiétude à avoir concernant les transactions

Le Défendeur Braunstein a fait appel à la supervision des régulateurs des banques fédérales du SCP afin de rassurer les investisseurs sur le SCP, en précisant aux investisseurs que JPMorgan divulguait ses transactions à ses régulateurs de façon « régulière et récurrente » et qu'en conséquence, les positions du SCP étaient « entièrement transparentes » pour les régulateurs, qui avaient un « accès » total sur ceux-ci à tout moment.

La SAC prétend que lesdites déclarations étaient fausses et trompeuses au moment où elles ont été faites. Contrairement aux déclarations des Défendeurs indiquant que les transactions du SCP étaient une couverture prudente, un agent OCC qui a analysé le SCP a conclu que le SCP montrait des « transactions pour compte propre classiques » puisque toutes les transactions avaient été réalisées pour générer des profits pour JPMorgan. Comme autre agent OCC l'a analysé, le SCP est devenu une « couverture composite aux vertus magiques ». Le PSI a également conclu que le SCP était une « opération de transaction qui n'avait pas sa place dans une banque assurée au niveau fédéral. » Il a conclu de plus que les préoccupations concernant le SCP n'étaient en rien une « tempête dans un verre d'eau ». Au moment de la convocation de JPMorgan le 13 avril, le SCP a prétendument causé plus de 1,2 milliard USD de pertes, y compris une perte de 400 millions USD en un jour ; et a violé toutes les limites de risque applicables à son égard, avec plus de 330 violations de limites de risques au cours du premier trimestre de 2012. De plus, les positions du SCP étaient si importantes (un montant notionnel de plus de

157 milliards USD), non liquides et concentrées qu'il aurait fallu des semaines ou des mois pour les ~~former~~.

En outre, la VaR de la Banque était supérieure à celle déclarée aux investisseurs dans ses dossiers réglementaires déposés auprès de la SEC. Avant sa conférence téléphonique avec les investisseurs le 13 avril, JPMorgan a manipulé le modèle de VaR CIO, ce qui a diminué artificiellement de moitié le risque déclaré de l'unité—permettant à JPMorgan de présenter une VaR CIO de 67 millions USD alors que la VaR était en réalité de 129 millions USD.

Enfin, contrairement aux affirmations de JPMorgan indiquant que les positions du SCP étaient « entièrement transparentes » et régulièrement analysées par ses régulateurs, JPMorgan a dissimulé les transactions du SCP à ses régulateurs. Le rapport du Sous-comité permanent du Sénat américain en charge des enquêtes (« PSI »), du personnel majoritaire et minoritaire était intitulé « Transactions de la baleine de JPMorgan Chase : un histoire d'abus et de risques dérivés » délivré conjointement à l'audience du PSI du 15 mars 2013 (le « Rapport du Sénat ») a conclu que JPMorgan avait en fait « [a]ugmenté les [r]isques [s]ans [n]otifier les [r]égulateurs, » « échappé à la surveillance du [SCP] par l'OCC pendant des années ,» et « révélé l'ampleur et la nature très risquée du portefeuille à ses régulateurs uniquement après avoir attiré l'attention des médias. »

En raison de l'échéance imminente pour déposer son rapport trimestriel du premier trimestre, la Banque a été contrainte de divulguer des informations sur le SCP. Le 10 mai 2012, les Défendeurs ont organisé une conférence téléphonique au cours de laquelle JPMorgan a révélé avoir perdu près de 2 milliards USD sur des transactions du CIO et a réaffirmé la VaR pour le CIO qu'elle avait mentionnée le 13 avril. Celles-ci et d'autres divulgations concernant le CIO et le SCP sont supposées avoir causé la chute importante des actions de JPMorgan, entraînant des dommages et intérêts pour les Demandeurs et le collectif.

### (ii)   Les Réclamations des Demandeurs selon M. Iksil

Le témoignage de M. Iksil est nécessaire pour les principaux problèmes concernant les réclamations et défenses dans la présente procédure. Tel que mentionné ci-dessus, M. Iksil était le

principal trader responsable des nombreuses transactions de dérivés de crédit du SCP, et il était directement impliqué dans la communication d'information à la direction de JPMorgan à New York, qui a fait les supposées fausses déclarations aux investisseurs concernant les pertes, risques et transactions du SCP. Ainsi, M. Iksil était au courant de la stratégie, des pertes, risques, et transactions du SCP au cours de la période concernée ainsi que des informations concernant les pertes, risques et transactions du SCP communiquées aux personnes en charge des déclarations de JPMorgan auprès des régulateurs et investisseurs en ce qui concerne lesdites questions. Son témoignage est d'une importance capitale pour les réclamations des Demandeurs principaux puisque—contrairement aux déclarations publiques des Défendeurs—le SCP n'était pas une couverture et n'était pas totalement transparent pour les régulateurs de JPMorgan.

### (iii) Résumé de la Défense

Dans leur demande de rejet de la SAC, les Défendeurs ont contesté les déclarations des Demandeurs principaux selon lesquelles les Défendeurs avaient fait d'importantes fausses déclarations ou que les Défendeurs agissaient en connaissance de cause, c'est-à-dire en connaissant ou en négligeant la fausseté de leurs déclarations. Après le refus du Tribunal de la demande de rejet à l'égard des réclamations en cours, les Défendeurs ont émis une Réponse dans laquelle ils ont nié le fait d'avoir fait d'importantes fausses déclarations consciemment ou par négligence et ont fait différentes déclarations affirmatives pour leur défense, notamment le fait d'avoir agi de bonne foi et d'avoir fait preuve de diligence raisonnable et que leurs supposées fausses déclarations n'ont pas entraîné de dommages à l'égard des Demandeurs principaux et du groupe d'investisseurs dans les actions de JPMorgan.

### 8. Témoignage à obtenir et Objet

Ce Tribunal demande, conformément à la Convention de la Haye, à l'autorité judiciaire française concernée de faire comparaître M. Bruno Iksil pour qu'il témoigne sous serment.

Le témoin dont le témoignage est souhaité réside au sein de la République française et n'est, d'après nos informations et convictions, ni domicilié ni ne travaille aux États-Unis. Ainsi, ce Tribunal ne peut pas directement le contraindre à présenter le témoignage demandé.

Plus particulièrement, le témoignage sous serment de M. Iksil conformément à la présente Lettre de demande est un témoignage admissible en vertu du droit des États-Unis, notamment la Règle fédérale de procédure civile 28(b) et la Règle fédérale 804 relative aux témoignages préalables, et peut être présenté au procès de l'affaire susmentionnée. Les Demandeurs souhaitent le témoignage de M. Iksil concernant les nombreux problèmes pertinents à l'égard des réclamations et défenses présentées dans la présente affaire, notamment le développement et la mise en œuvre des stratégies de transaction du SCP ; les synchronisation, taille, risque, liquidité et le rendement des transactions du SCP ; les pertes et expositions aux risques actuelles et futures du SCP ; et la communication d'informations du CIO concernant les pertes et transactions du SCP à la direction de JPMorgan.

Puisque ce Tribunal n'exprime aucune opinion sur le fonds ou sur tout autre point de la Plainte, de la Réponse ou de toutes autres demandes concernant l'affaire susmentionnée, celui-ci juge que le témoignage demandé sera pertinent et sera probant ou non sur les faits importants pertinents de la Plainte, de la Réponse ou toutes autres demandes dans l'affaire.

**9.    Identité et adresse de la Personne à interroger (Article 3(e))**

M. Bruno Iksil

Chez
JEAN-FRANCOIS DAVENE
WENNER SCP
70, boulevard de Courcelles
75017 Paris, France
Téléphone : +33 (0)1 42 66 89 00
Fax : +33 (0)1 42 66 89 01

*Représenté par :*
JEAN-FRANCOIS DAVENE
WENNER SCP
70, boulevard de Courcelles
75017 Paris, France
Téléphone : +33 (0)1 42 66 89 00
Fax : +33 (0)1 42 66 89 01

**10.    Exposé des faits sur lequel la Personne sera interrogée (article 3(f))**

En conséquence, le Tribunal demande que le témoin soit interrogé sur les sujets suivants :

1.      Ses expériences professionnelles et ses responsabilités au sein de JPMorgan au cours de la période concernée, mais aucune question ne sera posée sur les faits et circonstances du licenciement de M. Iskil de JPMorgan, sur le processus d'estimation ou d'évaluation des positions dans le SCP ni sur l'exactitude des estimations ou des évaluations des positions dans le SCP.

2.      Les pertes, risques et transactions du CIO dans le SCP au cours de la période concernée, mais aucune question ne sera posée sur le processus d'estimation ou d'évaluation des positions dans le SCP ni sur l'exactitude des estimations ou des évaluations dans le SCP. Ce sujet comprend de manière non exhaustive :

   a.      le développement, la mise en œuvre et l'approbation des stratégies de transaction du SCP ;

   b.      les synchronisation, taille, risque, liquidité et rendement des transactions du SCP ; et

   c.      tous les risques que la conception des transactions du SCP devait couvrir ou autrement éviter.

3.      Les politiques, pratiques et procédures du CIO ou de JPMorgan liées au CIO, concernant la couverture et la gestion des risques en rapport avec les dérivés, mais pas les sujets liés à la comptabilité ou au processus d'estimation ou d'évaluation des positions.

4.      La communication d'informations du CIO concernant le SCP à la direction de JPMorgan, mais aucune question ne sera posée sur le processus d'estimation ou d'évaluation des positions dans le SCP ni sur l'exactitude des estimations ou des évaluations dans le SCP.

5.      L'enquête interne de JPMorgan des transactions du SCP, étant entendu qu'aucune question ne sera posée sur une quelconque enquête interne relative au processus d'estimation ou d'évaluation des positions dans le SCP ni sur l'exactitude des estimations ou des évaluations dans le SCP.

**11.      Documents et autres Preuves à examiner (Article 3(g))**

   Aucun.

**12.   Le témoignage doit être rendu sous serment ou après déclaration sur l'honneur (Article 3(h))**

Ce Tribunal demande que le témoignage de M. Iksil soit recueilli sous serment ou après déclaration sur l'honneur. Conformément à la Règle fédérale 603 relative aux témoignages préalables des États-Unis, ce Tribunal exige que le témoin, M. Iksil, déclare qu'il témoignera honnêtement, sous serment ou après déclaration sur l'honneur de façon à éveiller sa conscience, et à lui faire pleinement comprendre son devoir de le faire. Le Tribunal demande notamment que le fonctionnaire dûment nommé demande au témoin de rendre son témoignage sous le serment suivant (ou la déclaration sur l'honneur) : « Je soussigné, Bruno Iksil, jure (ou déclare) que le présent témoignage est la vérité, toute la vérité et rien d'autre que la vérité. »

**13.   Méthode ou Procédures spéciales à suivre (Article 3(i))**

L'interrogatoire sera effectué conformément aux Règles fédérales de procédure civile des États-Unis, sauf dans la mesure où cette procédure est incompatible avec les lois internes françaises. Ce Tribunal demande : (1) que l'interrogatoire se fasse oralement ; (2) que l'interrogatoire soit réalisé devant un sténographe commercial et un enregistreur audio choisi par les Demandeurs principaux ; (3) que le sténographe puisse enregistrer l'interrogatoire par le biais de moyens audio ; (4) que le sténographe soit autorisé à enregistrer un compte rendu textuel de l'interrogatoire ; (5) que l'interrogatoire soit réalisé avec l'aide d'un interprète choisi par les Demandeurs principaux ; (6) que, si l'interrogatoire est effectué grâce à un interprète, des comptes rendus textuels de la procédure en anglais et en français soient effectués ; (7) que l'avocat des Demandeurs principaux et l'avocat des Défendeurs soit informés dans les plus brefs délais de la date, de l'heure et du lieu de l'interrogatoire, ainsi que toute autre information pertinente, y compris quelle autorité a été nommée pour présider la déposition ; (8) que l'avocat des Demandeurs principaux et l'avocat des Défendeurs soit autorisés à interroger M. Iksil concernant l'objet décrit à la Section 10 de la présente Demande ; (9) que la durée de l'interrogatoire soit de 7 heures ; (10) que l'interrogatoire soit réalisé à huis clos ; et (11) que le témoin soit interrogé dans les plus brefs délais.

Le Tribunal demande en outre (1) que l'avocat des parties et M. Iksil soient autorisés à s'opposer à la forme des questions tout comme ils seraient susceptibles de le faire dans le cadre d'une déposition effectuée aux États-Unis en vertu des Règles fédérales de procédure civile ; (2) que ces objections soient enregistrées par le sténographe ; et (3) dans la mesure raisonnablement nécessaire pour éviter la divulgation de renseignements protégés par le secret professionnel de l'avocat, le privilège relatif aux travaux juridiques préparatoires ou tout autre privilège applicable, que l'avocat soit autorisé à recommander à M. Iksil de ne pas répondre.

Conformément à la Stipulation et l'Ordonnance de protection modifiée conclues dans cette procédure par le Tribunal de district des États-Unis du District sud de New York le 28 mai 2015, l'interrogatoire du témoin, le témoignage du témoin et tout compte rendu ou enregistrement audio de l'interrogatoire et du témoignage seront réputés être « Confidentiels » et « Uniquement destinés aux avocats » conformément à la Stipulation et l'Ordonnance de protection modifiée.

Si le témoignage ne peut pas être recueilli selon certaines ou l'ensemble des procédures décrites ci-dessus, ce Tribunal demande que celui-ci soit recueilli conformément au droit français concernant le recueil formel de preuves testimoniales.

Le cas échéant, ce Tribunal fournit une assistance similaire tel que demandé dans les présentes aux autorités judiciaires françaises concernées.

14. **Demande de notification sur le lieu et l'heure pour l'exécution de la Demande, l'identité et l'adresse de toute personne devant être notifiée (Article 7)**

Veuillez notifier le lieu et l'heure pour l'exécution de la présente Demande au:

greffier du Tribunal de district des États-Unis
    du District sud de New York
Daniel Patrick Moynihan Palais de justice des États-Unis
500 Pearl Street
New York, NY 10007
États-Unis d'Amérique

Maître John Rizio-Hamilton.
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1285 Avenue of the Americas
38th Floor
New York, NY 10019

États-Unis d'Amérique
Téléphone : (212) 554-1400
Fax : (212) 554-1444
Courriel : johnr@blbglaw.com

Christopher M. Viapiano, Esq.
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
États-Unis d'Amérique
Téléphone : (202) 956-7500
Fax : (202) 956-7056
Courriel : viapianoc@sullcrom.com

**15.    Demande de présence ou participation du Personnel judiciaire de l'Autorité requérante à la signature de la Lettre de demande (Article 8)**

Oui.

**16.    Spécification du droit ou du devoir de refuser de témoigner conformément au droit de l'État d'origine (Article 11)**

Conformément au droit des États-Unis, un témoin a le droit de refuser de témoigner dans le cas où s'il le fait il divulguerait des informations confidentielles entre le témoin et son avocat qui avaient été communiquées notamment dans le but d'obtenir des conseils juridiques et s'il n'a pas renoncé audit droit. Le droit américain reconnaît également un droit à l'encontre de la propre incrimination pénale. D'autres droits limités pour des motifs non applicables dans ce cas existent également, par exemple les communications entre les médecins et patients, maris et femmes et entre les membres du clergé et leurs pénitents. Certaines immunités limitées sont également reconnues en dehors de la stricte définition de ce droit, par exemple la protection limitée du travail réalisé par les avocats pendant ou en prévision d'un litige.

**17.    Remboursement (Article 14)**

Les honoraires et coûts engagés dans l'exécution de la présente Demande qui sont remboursables conformément au deuxième paragraphe de l'Article 14 ou en vertu de l'Article 26 de la Convention de la Haye seront supportés par les Demandeurs susmentionnés.

Date de la Demande : _____, 2015

607135955.1                                    14

Mois, jour

SIGNATURE ET SCEAU DE L'AUTORITÉ REQUÉRANTE

(Apposez votre sceau ici.)

SEP 1 4 2015

Honorable George B. Daniels
Juge de district des États-Unis
Tribunal de district des États-Unis du
District sud de New York

607135955.1                    15



**TRANSPERFECT**

City of New York, State of New York, County of New York

TransPerfect is ISO 9001:2008 & EN 15038:2006 certified

I, Alitasha Younger, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the following document from English into French.

"REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS"

Alitasha Younger
Signature

Sworn to before me this
August 5, 2015

Signature, Notary Public

SAMANTHA DEWAAL MALEFYT
Notary Public - State of New York
No. 01DE6320363
Qualified in NEW YORK County
Commission Expires Mar 02, 2019

Stamp, Notary Public