**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE JPMORGAN CHASE & CO. SECURITIES LITIGATION | ) ) ) ) | Master File No. 1:12-cv-03852-GBD  CLASS ACTION |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

Dated: December 18, 2015

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 3

    A. LEAD PLAINTIFFS' FACTUAL ALLEGATIONS ................................................... 3

    B. PROCEDURAL POSTURE, MEDIATION, AND SETTLEMENT ................................. 7

    C. THE NOTICES AND PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND ...... 9

ARGUMENT ................................................................................................................ 10

    A. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............................ 10

    B. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND THE NOTICES AND SHOULD SCHEDULE A FINAL FAIRNESS HEARING ...................... 13

        1. The Settlement Satisfies the Criteria for Preliminary Approval ................... 13

        2. The Proposed Notices Satisfy Due Process and Meet the Requirements of Rule 23 and the PSLRA ................................................................................. 14

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    No. 11-cv-2279-CM, 2014 WL 1243799 (S.D.N.Y. Mar. 24, 2014) ...............................11, 13

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)..................................................................................................................13

*Chambery v. Tuxedo Junction Inc.*,
    No. 12-cv-6539-EAW, 2014 WL 1364933 (W.D.N.Y. Apr. 7, 2014) ....................................14

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ...........................................................................................16

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).......................................................................14, 15, 16

*Clark v. Ecolab, Inc.*,
    No. 07-cv-8623-PAC, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ...................................10

*Clem v. Keybank, N.A.*,
    No. 13-cv-789-JCF, 2014 WL 1265909 (S.D.N.Y. Mar. 27, 2014)........................................10

*In re EVCI Career Colls.*,
    No. 05-cv-10240-CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................13

*In re Giant Interactive Group, Inc.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................................11

*In re JPMorgan Chase & Co. Sec. Litig.*,
    No. 12-cv-3852, 2014 WL 1297446 (S.D.N.Y. Mar. 31, 2014)..........................................7, 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)................................................................................................................15

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................................12

*In re Traffic Exec. Assoc.-Eastern R.Rs.*,
    627 F.2d 631 (2d Cir. 1980)...........................................................................................11, 13

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..............................12

*Velez v. Novartis Pharmaceuticals Corp.*,
    No. 04-cv-9194-CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ......................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................................11, 12

*Yuzary v. HSBC Bank USA, N.A*,
    No. 12 Civ. 3693 (PGG), 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) ..............................10

## STATUTES

15 U.S.C. § 78u-4(a)(7) ....................................................................................................15

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 .................................................7

## OTHER AUTHORITIES

17 C.F.R. § 229.404(a).......................................................................................................1

Federal Rule of Civil Procedure Rule 23(e) .................................................................13, 14, 15, 16

## INTRODUCTION

Court-appointed Lead Plaintiffs Ohio Public Employees Retirement System ("OPERS"), Arkansas Teacher Retirement System ("Arkansas"), the State of Oregon by and through the Oregon State Treasurer on behalf of the Common School Fund and, together with the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund (collectively, "Oregon"), and Sjunde AP-Fonden ("AP7," and, together with OPERS, Arkansas, and Oregon, "Lead Plaintiffs"), on behalf of themselves and the Class[1] consisting of all persons and entities who purchased or otherwise acquired JPMorgan Chase & Co. ("JPMorgan" or the "Company") common stock during the period from April 13, 2012 through May 21, 2012, inclusive (the "Class Period"), and who were damaged thereby, respectfully submit this Memorandum of Points and Authorities in Support of Lead Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement, the terms of which are set forth in the Stipulation[2] filed contemporaneously herewith as Exhibit A to the Declaration of Jeff A. Almeida, dated December 18, 2015 ("Almeida Decl.").

The Settlement, if approved, would resolve and release the Class's claims against all Defendants in this Action in exchange for the immediate payment of $150,000,000, in cash, by Defendants.  This excellent result for the Class was reached after more than two years of

---

[1] In the course of negotiating the Stipulation and Agreement of Settlement dated December 18, 2015 (the "Stipulation"), Defendants and Lead Plaintiffs agreed that the definition of the Class would remain unchanged, but exclude: (i) Defendants; (ii) executive officers of JPMorgan who were employed during the Class Period, members of JPMorgan's Board of Directors during the Class Period, and members of their immediate families (as defined in 17 C.F.R. § 229.404(a), Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) the employees within JPMorgan's Chief Investment Office ("CIO") primarily responsible, before April 13, 2012, for management of CIO's Synthetic Credit Portfolio; (iv) any of the foregoing persons' legal representatives, heirs, successors or assigns; and (v) any entity in which any Defendant directly or indirectly has a controlling interest or had a controlling interest during the Class Period.  Notwithstanding the foregoing exclusions, no Investment Vehicle (as defined in the Stipulation) shall be excluded from the Class.  Also excluded from the Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

[2] All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation.

intensive fact investigation and discovery by Co-Lead Counsel, and was the product of good faith, arm's-length negotiations among experienced securities practitioners for the Parties, with the assistance of an experienced mediator, the Honorable Daniel H. Weinstein (Ret.).   The Parties did not agree on the terms of the Settlement until after the Court's decision on Defendants' motion to dismiss Lead Plaintiffs' claims, the completion of substantial discovery, including depositions, the Court's favorable decision to certify the Class, and a lengthy mediation spanning several months.   Thus, Lead Plaintiffs are fully aware of the strengths and weaknesses of this case, and have evaluated the risks of continued litigation and the fairness of its resolution at this time.   The Settlement, as set forth in the Stipulation, reflects a reasonable compromise concerning the merits of Lead Plaintiffs' claims (and the factual support for such claims) and the obstacles to prevailing at trial and on any appeal, while providing an excellent result for Class Members.

Accordingly, Lead Plaintiffs and their counsel believe the Settlement is fair and reasonable on its face, and respectfully request that the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice that, among other things: (1) grants preliminary approval of the proposed Settlement; (2) approves the Parties' proposed form and method of giving notice of the pendency of this litigation, certification of the Class, and the proposed Settlement to the Class; (3) directs that notice be given to the Class Members as approved by the Court; and (4) sets a schedule for the settlement approval process, including the scheduling of a final approval hearing at which the Court will consider (a) the Parties' request for final approval of the Settlement and entry of the [Proposed] Judgment Approving Class Action Settlement, (b) Lead Plaintiffs' request for approval of the proposed Plan of Allocation, and (c)

Co-Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses.

Lead Plaintiffs propose the following schedule:

- Mailing of individual Notice and Claim Forms by first-class mail to all potential Class Members at the addresses set forth in the records provided by or caused to be provided by JPMorgan, or who otherwise may be identified through further reasonable effort by no later than ***twenty-five (25) calendar days after entry of the Preliminary Approval Order (the "Notice Date").***

- Posting of the Notice and Claim Form on a website to be developed for the Settlement ***by the Notice Date***.

- Publication of the Summary Notice once in *The Wall Street Journal* and over the *PR Newswire* within ***ten (10) business days after the Notice Date***.

- Deadline for submission of requests for exclusion from the Class or objections to the Settlement, Plan of Allocation, or the application for fees and expenses: ***twenty-one (21) calendar days prior to the Settlement Hearing.***

- Postmark deadline for submission of Proofs of Claim: ***one hundred twenty (120) calendar days after the Notice Date.***

- Deadline for filing motions for final approval of Settlement, the Plan of Allocation and for attorneys' fees and reimbursement of expenses: ***thirty-five (35) calendar days prior to the Settlement Hearing.***

- Deadline for filing reply papers in support of motions for final approval of Settlement, the Plan of Allocation and for attorneys' fees and reimbursement of expenses: ***seven (7) calendar days prior to the Settlement Hearing.***

- Settlement Hearing: ***At the Court's convenience, but no fewer than one-hundred and six (106) calendar days after entry of the Preliminary Approval Order.***

## BACKGROUND

### A.   LEAD PLAINTIFFS' FACTUAL ALLEGATIONS

This class action alleges that Defendants JPMorgan, Chief Executive Officer James Dimon and former Chief Financial Officer Douglas Braunstein violated the federal securities

laws by making materially false and misleading statements concerning the risks and losses arising from the secret proprietary trading activities of the so-called "London Whale," a London-based trader in JPMorgan's CIO.   The CIO was purportedly the Bank's "principal risk management unit," which JPMorgan claimed was "responsible for making investments to hedge the structural risks of our balance sheet on a consolidated basis" — in other words, to decrease the Bank's risks by hedging them.   ¶¶275-76.[3]  Lead Plaintiffs have alleged that, contrary to this public portrayal, the most prominent activity carried out by the CIO was proprietary trading in an enormous portfolio of complex credit derivatives known as the Synthetic Credit Portfolio ("SCP"), which reflected over $150 billion in notional value by the time the Class Period began. ¶194.

Plaintiffs alleged that the size of the SCP's positions greatly increased during the first three months of 2012, triggering risk limit breaches that JPMorgan told investors it used to monitor and control risk, including the "value at risk" or "VaR" metric, which is a measure of how much money the CIO or Company could lose on a given day.  ¶¶160-62; 165.  Yet rather than require the CIO to reduce the SCP's positions – which would have resulted in substantial short-term losses, but mitigated the prospective risk of the portfolio – Dimon approved a temporary increase to the Bank's firm-wide VaR limit, and then authorized a change to the CIO's VaR model that instantaneously cut the VaR in half.  ¶¶136, 140, 167.

Further, Plaintiffs alleged that, beginning around February 2012, hedge funds such as Saba Capital recognized that certain credit derivative index markets were being distorted by a single trader taking on outsized positions (*i.e.*, the London Whale), and that by taking opposing positions they could reap profits when that trader was eventually forced to exit due to liquidity

---

[3] All references to "¶__" are to the Second Amended Consolidated Class Action Complaint ("SAC") (ECF No. 61).

constraints and mounting mark-to-market losses. ¶156. On April 5 and 6, 2012, front-page stories in *The Wall Street Journal* and *Bloomberg* reported market rumors about the SCP's proprietary trading activities and the size of its increasingly illiquid positions. ¶¶188-90. In response to this media attention, Dimon, Braunstein, and JPMorgan Chief Investment Officer Ina Drew allegedly developed a calculated public-relations strategy to allay investor concerns about the London Whale. ¶188.

On the April 13, 2012 call, the first day of the Class Period, Dimon and Braunstein allegedly made false statements from a set of pre-approved talking points designed to assure investors that the London Whale trades were hedges used to manage risk and were not a concern. ¶¶200-03. Specifically, Braunstein reassured investors that the SCP's positions represented a hedge put on "pursuant to the risk management at the Firm-wide level" to "keep the Company effectively balanced from a risk standpoint," and that JPMorgan was "very comfortable with [its] positions." ¶201. Moreover, according to Braunstein, the SCP's positions were "fully transparent to the regulators" who "review them, have access to them at any point in time, [and] get the information on those positions on a regular and recurring basis." *Id.* Dimon flatly dismissed investor concerns over the trades as a "complete tempest in a teapot." ¶203.

Lead Plaintiffs also allege that JPMorgan concealed the true risks in the CIO by falsely reporting the CIO's VaR in an earnings release financial supplement accompanying Dimon and Braunstein's April 13, 2012 presentation. ¶¶314-17. The Bank represented that the CIO's VaR had decreased from the prior quarter, from $69 million to $67 million. ¶314. In truth, the CIO's VaR would have been twice that amount if not for the implementation of the new VaR model. ¶316. By failing to disclose the substantial model change, JPMorgan conveyed the impression that the CIO's risk profile had improved from the prior quarter despite the fact that the SCP had,

in truth, tripled in size and had incurred daily losses that were six times larger than the $67 million that the reported VaR suggested was the most the CIO could lose in a single day. ¶¶190; 314-17.

Investors allegedly did not learn the truth until May 2012, when JPMorgan revealed in a series of disclosures that the CIO's speculative trading had caused substantial losses, could lead to more losses, and that the CIO's true VaR was twice what the Bank had originally reported – revelations that prompted severe declines in JPMorgan's stock price and caused damages to Lead Plaintiffs and the other members of the Class. ¶¶14, 367-85. On May 10, 2012, after the close of trading, Dimon stunned the market by admitting that the SCP had already incurred over $2 billion in losses, and could suffer more losses in the coming months. ¶¶205-09, 372-73. Dimon also disclosed for the first time that JPMorgan had changed the CIO's VaR model during the prior quarter, admitting that the CIO's VaR at the end of the first quarter was actually $129 million, double the amount the Bank had reported to investors. ¶210. In response to these revelations, JPMorgan stock plunged nearly 10%, falling from $40.74 to $36.96 on the highest single-day trading volume in the Company's history. ¶211.

Then, after the close of the market on May 16, 2012, the *New York Times* reported that the CIO's losses had increased by 50% in just days, revealing the portfolio was even more vulnerable and volatile than disclosed on May 10, causing JPMorgan stock to fall from $35.46 per share on May 16, 2012 to close at $33.93 per share on May 17, 2012. ¶¶216, 380-81.

Finally, on May 21, 2012, JPMorgan disclosed that the London Whale trades had forced the Company to halt its $15 billion share repurchase program, as the mounting losses and regulators' concerns over the CIO's risk profile required the Bank to increase its capital cushion.

In response to this disclosure, JPMorgan's stock fell from a $33.49 per share close on May 18, 2012 to $32.51 per share on May 21, 2012.  ¶¶218, 382-84.[4]

B.   PROCEDURAL POSTURE, MEDIATION, AND SETTLEMENT

Beginning on May 14, 2012, multiple putative securities class action complaints were filed in the United States District Court for the Southern District of New York regarding the London Whale losses.  By Order dated August 21, 2012, the Court consolidated the related actions under the caption *In re JPMorgan Chase & Co. Securities Litigation*, Master File No. 12-cv-03852-GBD (the "Action"); appointed OPERS, the School Employees Retirement System of Ohio, the State Teachers Retirement System of Ohio,[5] Arkansas, AP7, and Oregon as lead plaintiffs in the consolidated Action; and approved their selection of Grant & Eisenhofer P.A., Bernstein Litowitz Berger & Grossmann LLP, and Kessler Topaz Meltzer & Check, LLP as Co-Lead Counsel.

On April 15, 2013, Lead Plaintiffs filed and served the SAC, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  The SAC alleged that Defendants made, or controlled others who made, materially false and misleading statements and failed to disclose material facts about the nature of the CIO's trading and risk management activities, the extent of the existing and potential risk posed by the CIO's SCP, and the potential losses resulting from the CIO's synthetic credit trading, and that these false statements and omissions caused the price of JPMorgan common stock to be artificially inflated during the relevant time period.

---

[4] Defendants deny Lead Plaintiffs' allegations and did not admit to any wrongdoing in connection with the settlement.

[5] The School Employees Retirement System of Ohio and the State Teachers Retirement System of Ohio voluntarily dismissed their claims without prejudice on July 21, 2014 and September 3, 2014, respectively.  ECF Nos. 114; 119.

On June 11, 2013, Defendants filed and served their motion to dismiss the SAC.  The motion was decided on March 31, 2014, when the Court entered a Memorandum Decision and Order granting it in part and denying it in part.  *See In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-cv-3852, 2014 WL 1297446 (S.D.N.Y. Mar. 31, 2014).  The Court granted the motion as to all of the SAC's alleged misstatements other than those made on April 13, 2012, on the grounds that Lead Plaintiffs had not adequately alleged material misrepresentations or scienter as to those alleged misstatements, and dismissed all claims against Michael J. Cavanagh, Ina R. Drew, and Barry L. Zubrow.  *See id.* at *6 n.3, *10.  The Court denied Defendants' motion to dismiss the remaining claims against JPMorgan, Dimon, and Braunstein.  *See id.* at *10.

Formal discovery in the Action commenced in May 2014.  Lead Plaintiffs obtained documents from Defendants and third parties, and conducted a targeted review of approximately ten million pages of documents.  Lead Plaintiffs also collected and produced thousands of pages of their documents to Defendants.  Lead Plaintiffs took the depositions of seven current and former JPMorgan employees, and Defendants' market efficiency expert.  Defendants took the depositions of four representatives of Lead Plaintiffs, and Lead Plaintiffs' market efficiency expert.

On February 13, 2015, Lead Plaintiffs moved for class certification.  On September 29, 2015, after full briefing and an argument, the Court granted Lead Plaintiffs' motion to certify the Class, appointing OPERS, Arkansas, and Oregon as class representatives and approving their selection of class counsel.

Following extensive arm's-length negotiations, including significant mediation efforts conducted by the Honorable Daniel H. Weinstein (Ret.) between June and October 2015, the Parties reached an agreement in principle to settle the Action for $150 million in cash.  Even

after the agreement in principle was reached, the Parties spent significant additional time drafting and negotiating the remaining terms of their agreement.   On December 18, 2015, the Parties entered into the Stipulation setting forth the terms and conditions of the Settlement.

### C.    THE NOTICES AND PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND

Lead Plaintiffs propose to utilize a notice plan of the kind that is typically used in the settlement of securities class actions.  The Notice and Claim Form will be sent to the last known mailing addresses of those Class Members whose addresses can be identified through reasonable effort, providing them with the information required by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), including a statement of recovery, the nature of the Action, a statement of the fees and expenses that Co-Lead Counsel are seeking, the procedures for making a claim, and the procedures for opting out of the Class or objecting to the Settlement or any aspect thereof.  *See* Arg. §B.2, *infra*.  The Notice will also advise recipients of the Court's certification of the Class.  In addition, the Summary Notice will be published in *The Wall Street Journal* and released over the *PR Newswire*.[6]  The Claims Administrator will also set up a public website containing the Notice, Claim Form, and other information and documents that may be useful to Class Members assessing the Settlement.

The proposed Plan of Allocation (the "Plan")[7] is similar to plans of allocation that have been approved in numerous securities class actions asserting claims under Section 10(b) and Rule 10b-5 of the Exchange Act.  The Plan allocates the Net Settlement Fund based on an estimate (determined by Co-Lead Counsel and their experts) of the amounts by which the market prices of JPMorgan common stock trading on the New York Stock Exchange were artificially

---

[6] The Notice, Claim Form and Summary Notice are attached as Exhibits B, C, and D to the Almeida Declaration.

[7] The Plan is included in the Notice attached as Exhibit B to the Almeida Declaration.

inflated at various points during the Class Period, and takes into consideration when an Authorized Claimant purchased and/or acquired JPMorgan common stock and when those shares were sold (if at all). Under the Plan, no Class Member will receive a payment unless they held JPMorgan common stock through at least one alleged corrective disclosure date and the amount of their payment calculates to $10 or more. Further, no Class Member, including Lead Plaintiffs, is entitled to preferential treatment under the Plan; rather, all payments out of the Net Settlement Fund will be divided among approved claimants on a *pro rata* basis, based strictly upon demonstrable losses calculated under the Plan.

## ARGUMENT

### A.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Judicial review of a proposed class action settlement consists of a two-step process: preliminary approval, followed by the distribution of notice to the class, and final approval. *See Yuzary v. HSBC Bank USA, N.A*, No. 12 Civ. 3693 (PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013); *Clark v. Ecolab, Inc.*, No. 07-cv-8623-PAC, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) ("Preliminary approval, which is what Plaintiffs seek here, is the first step in the settlement process. It simply allows notice to issue to the class and for class members to object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input."). "Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Clark*, 2009 WL 6615729, at *3, *quoting* HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002). The primary question raised by a request for preliminary approval is whether there is "probable cause" to submit the settlement to Class Members and

hold a full-scale hearing as to its fairness.  *Id.*; *see also Clem v. Keybank, N.A.*, No. 13-cv-789-JCF, 2014 WL 1265909, at *1 (S.D.N.Y. Mar. 27, 2014) (same).

Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate.  *See In re Traffic Exec. Assoc.-Eastern R.Rs.,* 627 F.2d 631, 634 (2d Cir. 1980).  These decisions are made only at the final approval stage, after notice of the settlement has been provided to class members, and they have had an opportunity to opt-out of or object to the settlement.  *See id.*  However, courts do make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms, and in that context, consider whether or not there is "probable cause" that the settlement could be approved.  *See id.*  "The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."  *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11-cv-2279-CM, 2014 WL 1243799, at *3 (S.D.N.Y. Mar. 24, 2014).  Furthermore, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), *quoting* MANUAL FOR COMPLEX LITIGATION, § 30.42 (3d ed. 1995); *see also In re Giant Interactive Group, Inc.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (the fact that negotiations were "facilitated by a respected mediator" supported the presumption of fairness).

Here, the proposed Settlement is an excellent result for the Class, as it provides for substantial, immediate monetary benefits to the Class of $150 million, and eliminates the risk that further litigation might lead to no recovery or a smaller recovery.  In particular, Co-Lead Counsel weighed the risks that Lead Plaintiffs might not be able to prove at trial that: (1) Dimon

and Braunstein acted with scienter when they made their alleged misstatements on April 13, 2012; (2) Defendants' alleged misstatements regarding VaR were material to investors; or (3) the May 21, 2012 disclosure that JPMorgan was cancelling its stock repurchase program constituted a corrective disclosure of Dimon's and Braunstein's April 13 statements, and that on April 13 Dimon and Braunstein knew or recklessly disregarded the possibility that the stock repurchase program was in jeopardy.  In light of these substantial risks and obstacles to recovery, Co-Lead Counsel believe an immediate payment of $150 million to the Class is an excellent result.

Moreover, the proposed Settlement is entitled to a presumption of fairness and should be preliminarily approved because it was reached only after (a) extensive discovery, including the review of millions of pages of documents and the depositions of several high-ranking JPMorgan personnel (and former personnel); (b) serious, arm's-length negotiations between informed and experienced counsel utilizing a highly qualified mediator; and (c) participation and approval by institutional investor Lead Plaintiffs, who support the Settlement as the best result available to the Class under the circumstances.  *See Wal-Mart*, 396 F.3d at 116; *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) ("Judge Weinstein's role in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion."); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (a settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'").

Finally, the Settlement has no obvious deficiencies as it does not improperly grant preferential treatment to the Lead Plaintiffs or any Class Member, and falls within an acceptable range for approval.

**B.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND THE NOTICES AND SHOULD SCHEDULE A FINAL FAIRNESS HEARING**

**1.     The Settlement Satisfies the Criteria for Preliminary Approval**

Federal Rule of Civil Procedure Rule 23(e) requires this Court to review and, if appropriate, approve the proposed settlement of any class action.  The Court's inquiry is guided by the strong federal policy favoring the voluntary resolution of disputes.  *See In re Advanced Battery Techs.,* 2014 WL 1243799, at *3.  "A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws.  Moreover, under the PSLRA, a settlement reached under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness."  *In re EVCI Career Colls.*, No. 05-cv-10240-CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) (citation omitted); *see also Velez v. Novartis Pharmaceuticals Corp.*, No. 04-cv-9194-CM, 2010 WL 4877852, at *12 (S.D.N.Y. Nov. 30, 2010) ("Given the prevailing policy in favor of settlement, there is a strong, bedrock presumption that a negotiated settlement is 'fair and reasonable.'").  The Supreme Court has stated that when a court is judging the fairness of a proposed settlement, it should "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981).  When approval is *preliminary*, as it is here, the Court's inquiry is slightly relaxed.  At this stage, the Court is not being asked to determine finally that the Settlement is fair and reasonable.  *See In re Traffic Exec. Ass'n*, 627 F.2d at 634.  Rather, preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *Id.*  "A proposed settlement of a class action should . . . be preliminarily approved where it appears to be the product of serious,

informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Chambery v. Tuxedo Junction Inc.*, No. 12-cv-6539-EAW, 2014 WL 1364933, at *3 (W.D.N.Y. Apr. 7, 2014) (quotations omitted). Ultimately, at the Settlement Hearing, the Court will determine if the Settlement is fair, reasonable, adequate, and in the best interests of the Class.

The Settlement here easily satisfies these criteria. It is the product of extensive arm's-length negotiations between counsel for the parties under the supervision and participation of a reputable mediator. And the monetary result – $150 million – is substantial in light of the many obstacles to recovery.

### 2. The Proposed Notices Satisfy Due Process and Meet the Requirements of Rule 23 and the PSLRA

The Parties have agreed on the contents and format of the Notice, Claim Form and Summary Notice. *See* Almeida Decl., Exs. B, C and D, respectively. The Notice and Claim Form will be sent by first-class mail to potential Class Members at the addresses set forth in the records provided by or caused to be provided by JPMorgan, or who otherwise may be identified through further reasonable effort, the Summary Notice will be published once in *The Wall Street Journal* and once over PR Newswire, and the Court-appointed administrator, KCC/Gilardi & Co., LLC, will maintain a website where the Notice and Claim Form will be posted, along with other information that Class Members may find useful and relevant to their claims decisions.

"Rule 23 requires notice to the class both when the class is certified pursuant to Rule 23(b)(3) and when a class action settlement has been proposed for court approval." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 379-80 (S.D.N.Y. 2013). Notice of the two

14

events may be combined, as the Notice does, in order to save the Class the expense of two rounds of classwide notice.  *See id.*

The Notice and notification process comply with the requirements of Rule 23, the PSLRA's notice provision, 15 U.S.C. § 78u-4(a)(7), Rule 23(c)(2)(B), and due process.  Rule 23 requires the court to "direct to class members the best notice that is practicable under the circumstances" to "all members who can be identified through reasonable effort," and identifies a list of specific topics the notice must address.  Fed. R. Civ. P. 23(c)(2)(B).  The PSLRA likewise provides specific information that the notice must include.  *See generally* 15 U.S.C. § 78u-4(a)(7).  Due process further requires that the Notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, among other things, the Notice provides the following information:

- a statement of plaintiff recovery, *compare* § 78u-4(a)(7)(A) *with* Notice at ¶¶2-3;

- the nature of the action and statement of the potential outcome of the case, *compare* Rule 23(c)(2)(B)(i) and 15 U.S.C. § 78u-4(a)(7)(B) *with* Notice at ¶¶1, 4, 12-21, 23-26;

- a statement of the fees and costs that counsel are seeking, *compare* 15 U.S.C. § 78u-4(a)(7)(C) *with* Notice at ¶¶5, 63;

- the names of representatives for Class Counsel who can answer Class Members' questions, *compare* 15 U.S.C. § 78u-4(a)(7)(D) *with* Notice at ¶6;

- the Class definition, *compare* Rule 23(c)(2)(B)(ii) *with* Notice at p.1, ¶22;

- the Class's claims, issues, and defenses and the reasons for the Settlement, *compare* Rule 23(c)(B)(iii) and 15 U.S.C. § 78u-4(a)(7)(E) *with* Notice at ¶¶7, 15, 23-25;

- that a Class Member may, if he or she wishes, appear at a fairness hearing and

object through his or her own attorney, *compare* Rule 23(c)(B)(iv) and Rule 23(e)(5) *with* Notice at ¶¶27, 73-74;

- that any Class Member may opt-out and the timing and mechanism for that procedure, *compare* Rule 23(c)(B)(v)-(vi) *with* Notice at ¶¶64-67; and

- that the final judgment in this case will bind all Class Members, *compare* Rule 23(c)(B)(vii) *with* Notice at ¶¶28-29.

Notices including this information have been held to be sufficient.  *See, e.g., In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013) (approving of notice that complied with the requirements of Rule 23 and the PSLRA).  A notice plan such as this one, which combines individual notice to all Class Members whose names and addresses may be ascertained through reasonable effort, all of the information that the Federal Rules of Civil Procedure requires, and the additional disclosures required in securities class action cases, meets the requirements of due process and should be approved.  *See In re Citigroup Sec. Litig.*, 965 F. Supp. 2d at 380.

## CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court:  (1) preliminarily approve the proposed Settlement as within the range of possible fairness, reasonableness, and adequacy; (2) preliminarily approve the form and manner of the proposed Notices and Claim Form; and (3) set a date and time for the hearing regarding final approval of the Settlement and Co-Lead Counsel's application for attorneys' fees and expenses.  The [Proposed] Order Preliminarily Approving Settlement and Providing for Notice is attached as Exhibit E to the Almeida Declaration.

Dated:  December 18, 2015                          Respectfully Submitted,

| **GRANT & EISENHOFER P.A.** | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | **KESSLER TOPAZ MELTZER & CHECK LLP** |
|---|---|---|
| s/  Daniel L. Berger | s/ Salvatore Graziano | s/  David Kessler |
| Jay W. Eisenhofer | Salvatore Graziano | David Kessler |
| Daniel L. Berger | John Rizio-Hamilton | Andrew L. Zivitz |
| Jeffrey A. Almeida | Jonathan Uslaner | Matthew L. Mustokoff |
| 485 Lexington Avenue | 1251 Avenue of the Americas | Johnston de F. Whitman, Jr. |
| New York, NY 10017 | 44th Floor | 280 King of Prussia Road |
| Telephone:  (646) 722-8505 | New York, NY 10020 | Radnor, PA 19087 |
| Facsimile:  (302) 622-7004 | Telephone: (212) 554-1400 | Telephone:  (610) 667-7706 |
| jeisenhofer@gelaw.com | Facsimile: (212) 554-1444 | Facsimile:  (610) 667-7056 |
| dberger@gelaw.com | salvatore@blbglaw.com | dkessler@ktmc.com |
| jalmeida@gelaw.com | johnr@blbglaw.com | azivitz@ktmc.com |
|  | jonu@blbglaw.com | mmustokoff@ktmc.com |
|  |  | jwhitman@ktmc.com |

*Co-Lead Counsel for Lead Plaintiffs and the Class*

*Additional Counsel:*

**STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.**
Keith Ketterling
Keith Dubanevich
209 Southwest Oak Street
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
KKetterling@stollberne.com
KDubanevich@stollberne.com

*Special Assistant Attorneys General
and Counsel the State of Oregon by and
through the Oregon State Treasurer on
behalf of the Common School Fund and,
together with the Oregon Public Employee
Retirement Board, on behalf of the Oregon
Public Employee Retirement Fund*