UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE JPMORGAN CHASE & CO. SECURITIES LITIGATION | Master File No. 1:12-cv-03852-GBD |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF: (A) LEAD
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION; AND (B) CO-LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

| **GRANT & EISENHOFER P.A.** | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | **KESSLER TOPAZ MELTZER & CHECK LLP** |
|---|---|---|
| Daniel L. Berger | Max Berger | David Kessler |
| Jeffrey A. Almeida | Salvatore Graziano | Andrew L. Zivitz |
| 485 Lexington Avenue | 1251 Avenue of the Americas | 280 King of Prussia Road |
| New York, NY 10017 | New York, NY 10020 | Radnor, PA 19087 |
| Telephone: (646) 722-8505 | Telephone: (212) 554-1400 | Telephone: (610) 667-7706 |
| Facsimile: (302) 622-7004 | Facsimile: (212) 554-1444 | Facsimile: (610) 667-7056 |

Dated: May 3, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

A. PRELIMINARY STATEMENT ...........................................................................1

B. THE REACTION OF THE CLASS SUPPORTS APPROVAL .........................1

    1. The Class's Reaction Supports Settlement Approval ..............................2

    2. The Class's Reaction Supports Approval Of The Fee And Expense Request ...................................................................................................3

C. THE OBJECTIONS ARE WITHOUT MERIT AND SHOULD BE REJECTED .............3

    1. Neither Objector Has Established His Standing to Object .....................3

    2. Mr. Babin's Objections Are Meritless ....................................................4

    3. Mr. Brown's Objections Are Meritless ..................................................6

D. CONCLUSION ......................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*In re Am. Int'l Group, Inc. Sec. Litig.*,
  916 F. Supp. 2d 454 (S.D.N.Y. 2013) ...................................................................................4

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...........................................................................3

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................................5

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y. July 16, 2007) .......................................................................3

*In re Celestica, Inc. Sec. Litig.*,
  No. 1:07-cv-312-GBD-MHD .................................................................................................6

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ..................................................................................................4

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ..........................................................................................3

*In re Citigroup, Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ...................................................................................4

*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emples. Ret. Sys.*,
  814 F.3d 652 (2d Cir. 2016) ..................................................................................................9

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................................2

*In re Initial Pub. Offering Sec. Litig.*,
  721 F. Supp. 2d 210 (S.D.N.Y. 2010) ...................................................................................7

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..........................................................................................7

*NECA v. Goldman, Sachs & Co.*,
  No. 1:08-cv-4429-LAP (S.D.N.Y. May 2, 2016) .................................................................9

*O'Keefe v. Mercedes–Benz USA, LLC*,
  214 F.R.D. 266 (E.D. Pa. 2003) ............................................................................................6

*In re Pall Corp. Class Action Attorneys' Fees Application*,
   2013 WL 1702227 (E.D.N.Y. Apr. 8, 2013) ...........................................................................8

*Phillips Petrol. Co. v. Shutts*,
   472 U.S. 797 (1985) ...............................................................................................................4

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d. Cir. 2005) .................................................................................................3

*In re Sanofi-Aventis Sec. Litig.*,
   No. 1:07-cv-10279-GBD, slip op. (S.D.N.Y. Jan. 22, 2014) .............................................4, 6

*Shapiro v. JP Morgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................................................9

*United States v. 110-118 Riverside Tenants Corp.*,
   886 F.2d 514 (2d Cir. 1989) ..................................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ....................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ...........................................................................................................................4

A.  **PRELIMINARY STATEMENT**

The reaction of the Class[1] confirms that the proposed $150 million Settlement is an excellent result. Following an extensive notice program, including Notice mailed to over 743,000 potential Class Members, not a single institutional investor or large shareholder has objected to any aspect of the Settlement, the Plan of Allocation, or the requested fees and expenses. This is particularly meaningful because institutional investors held approximately 76% of JPMorgan's common stock during the Class Period.

Lead Plaintiffs have received only 68 exclusion requests, all from small shareholders, and just two objections.[2] Neither objector submitted the proof of Class membership required by the Court's January 19, 2016 Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 201) ("Preliminary Approval Order"), and, even if they are Class Members, their objections are without merit and should be overruled, as explained below.

B.  **THE REACTION OF THE CLASS SUPPORTS APPROVAL**

The Claims Administrator, KCC/Gilardi & Co., LLC ("KCC"), began mailing copies of the Notice and Claim Form (the "Notice Packet") on February 12, 2016. *See* Declaration of Justin R. Hughes, dated April 4, 2016 (ECF No. 206-5) (the "Mailing Decl.") ¶¶3-7. Through May 2, 2016, 743,313 copies of the Notice Packet have been mailed to potential Class Members and nominees. *See* Suppl. Berger Decl., Ex. 1 [Suppl. Decl. of Daniel Marotto ("Suppl. Mailing Decl.")]. Separately, on February 12, 2016, the Notice, Claim Form, Stipulation, and Preliminary Approval Order were made available to download from the Settlement website (Mailing Decl.

---

[1] Unless otherwise indicated, capitalized terms have the meanings ascribed in the Stipulation and Agreement of Settlement, dated December 18, 2015 ("Stipulation") (ECF No. 198-1).

[2] The objections of Kenneth John Babin and Jeff M. Brown are attached as Exhibits 2 and 3 to the Supplemental Declaration of Daniel L. Berger ("Supplemental Berger Declaration" or "Suppl. Berger Decl.").

¶10) and, on February 25, 2016, the Summary Notice was published in the *Wall Street Journal* and released over the *PR Newswire*. *Id.* ¶8 & Exs. B and C.

On April 5, 2016, Lead Plaintiffs and Co-Lead Counsel filed papers in support of the Settlement, the Plan of Allocation, and the fee and expense request. ECF Nos. 202-06. These documents were also placed on the Settlement website. *See* Suppl. Mailing Decl. ¶4.

Institutional investors owned the overwhelming majority of the publicly traded JPMorgan common stock during the Class Period, but, notably, none have requested exclusion or objected to any aspect of the Settlement. Furthermore, in response to the notice program, only 68 requests for exclusion have been received. *See* Suppl. Mailing Decl. ¶7. Of those requests, 32 were submitted by individuals who either appear not to be Class Members or did not provide all of the information required by the Preliminary Approval Order.[3] The requests that did provide purchase information represent **at most** 13,000 shares of JPMorgan common stock, or approximately 0.002% of the over 640 million estimated affected shares purchased during the Class Period – a miniscule percentage.

### 1. The Class's Reaction Supports Settlement Approval

The small number of objections and opt outs supports a finding that the Settlement is fair, reasonable, and adequate. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *In re Global Crossing Sec. & ERISA Litig.*, 225

---

[3] Suppl. Mailing Decl. ¶6. In addition, three requests were received after the opt-out deadline. *Id.* Co-Lead Counsel requested that Defendants waive all technical defects and timeliness issues, and allow all 68 opt outs; however, Defendants have not agreed to do so. Lead Plaintiffs respectfully request that the Court accept all timely filed requests for exclusion, regardless of whether they met the technical requirements for opting out, as all have evidenced a desire to be excluded from the case. Lead Plaintiffs take no position as to the late-filed opt outs.

F.R.D. 436, 457, 458 (S.D.N.Y. 2004) (six objections out of a class of approximately one million was "vanishingly small" and "constitutes a ringing endorsement of the settlement by class members"). Moreover, the fact that no institutional investors, who have the largest economic stake in the litigation, objected or requested exclusion further underscores the reasonableness of the Settlement. *See In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 156 (S.D.N.Y. 2013) ("not one of the objections or requests for exclusion was submitted by an institutional investor"); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (lack of objections from institutional investors supported approval of settlement).

### 2. The Class's Reaction Supports Approval Of The Fee And Expense Request

The response of the Class also supports Co-Lead Counsel's request for attorneys' fees and reimbursement of expenses. Again, not a single institutional investor objected to the fee request. *See In re Bisys Sec. Litig.,* 2007 WL 2049726, at *1 (S.D.N.Y. July 16, 2007) ("not a single class member other than [Mr.] Zorn raised any objection – even though the class included numerous institutional investors who presumably had the means, the motive, and the sophistication to raise objections if they thought the [requested] fee was excessive"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d. Cir. 2005) ("a significant number of investors in the class were 'sophisticated' institutional investors that had considerable financial incentive to object had they believed the requested fees were excessive" and did not do so).

## C. THE OBJECTIONS ARE WITHOUT MERIT AND SHOULD BE REJECTED

### 1. Neither Objector Has Established His Standing to Object

In violation of this Court's Preliminary Approval Order and the instructions laid out in the Notice, neither Mr. Brown nor Mr. Babin provided documentation demonstrating that he is a Class Member and, thus, has standing to object. Given this failure, both objections should be

3

rejected. *See, e.g.*, *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007) (non-class member could not object to proposed settlement); *In re Am. Int'l Group, Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 459 (S.D.N.Y. 2013) ("[non-class member] does not have standing under Rule 23 to object to the Settlement"); *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 379 (S.D.N.Y. 2013) (excluding objections "from individuals who did not provide the required evidence of class membership or who provided evidence indicating they were not class members"). Indeed, this Court recently rejected an objection from Mr. Brown to a securities class action settlement for failure to establish his standing by proving he was a class member. *See In re Sanofi-Aventis Sec. Litig.*, No. 1:07-cv-10279-GBD, slip op. at 2 (S.D.N.Y. Jan. 22, 2014), ECF No. 282 ("… Mr. Brown failed to establish he is a Member of the Class and thus lacks standing to object").

### 2. Mr. Babin's Objections Are Meritless

Even if Mr. Babin could establish standing, his objections should be overruled. His objections to the Settlement and fee request are boilerplate and could be filed in connection with any class action settlement. ***None*** of Mr. Babin's generic objections discuss facts specific to this case or the Settlement here.

*First*, Mr. Babin objects to Congress's enactment of the Rule 23(b)(3) procedure providing for opting out of, rather than opting into, a class. Aside from advocating for an inefficient process, *see Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (noting that if members were required to opt in, many potential class members' individual claims may be so small, or they may be so unfamiliar with the law, that they would not opt in), Mr. Babin's critique of Rule 23 provides no basis to reject the Settlement proposed in this case.

*Second*, Mr. Babin questions Co-Lead Counsel's entitlement to the attorneys' fees and expenses described in the Notice, which he characterizes as "outrageous," yet he doesn't cite any

4

law or facts that support his bald assertion. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 264 n.3 (S.D.N.Y. 2012) (rejecting objection to proposed attorneys' fees as "excessive" for being "conclusory and bereft of factual or legal support"). In fact, Mr. Babin submitted his objection before Co-Lead Counsel had filed the Joint Declaration and memorandum supporting their request for an award of attorneys' fees and expenses, which describe in detail the work that Plaintiffs' Counsel performed. *See* ECF Nos. 205; 206 ¶¶19-122. As demonstrated in those filings, the requested fee is supported by Co-Lead Counsel's extensive work during the course of this Action, and is well within the range of fees awarded in similar cases when analyzed under either the lodestar or the percentage-of-the-fund method.

*Third*, Mr. Babin suggests that Lead Plaintiffs should bear the expenses of the litigation. But as the Second Circuit stated in *United States v. 110-118 Riverside Tenants Corp.*, 886 F.2d 514, 521 (2d Cir. 1989) (internal citations and quotations omitted):

> Where a party creates a substantial fund at the behest of and for the benefit of another party, equity requires that the expenses of the creator of the fund be paid out of the fund. The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.

Through their efforts, Co-Lead Counsel created a $150 million fund and it is entirely fair that the expenditures incurred to create this fund be borne pro rata by the Class Members who benefit.[4]

*Finally*, Mr. Babin complains that he "sincerely wish[es] JPMorgan had vigorously defended itself from this claim." To the extent this complaint can be considered an objection, it is unfounded. Defendants' counsel – Sullivan & Cromwell LLP - vigorously represented

---

[4] Mr. Babin contends that the statement in ¶ 5 of the Notice that "Class Members are not personally liable for any such fees and expenses" is not true because the fees and expenses will be deducted from the Settlement Fund, reducing the per-share award to the Class. But Class Members are not "personally liable" for fees and expenses because they will not be required to pay any fees and expenses if for some reason the Settlement is not approved.

5

JPMorgan throughout this litigation. In any event, the question for the Court is whether the Settlement is fair, reasonable, and adequate to the Class, not whether it is fair to JPMorgan.

### 3. Mr. Brown's Objections Are Meritless

Like Mr. Babin, Mr. Brown's objections are meritless and should be overruled. As an initial matter, Mr. Brown is an attorney and a "professional" objector who has lodged serial objections in at least ten class action settlements, including two which this Court summarily rejected. *See* Suppl. Berger Decl., Ex. 4, *In re Sanofi-Aventis Sec. Litig.*, slip op. at 2 ("Even if the Court were to consider the objection, it is without merit and, therefore, overruled in its entirety."); Suppl. Berger Decl. Ex. 5, *In re Celestica, Inc. Sec. Litig.*, No. 1:07-cv-312-GBD-MHD, transcript at 24 (S.D.N.Y. July 28, 2015), ECF No. 269 (overruling objections similar to those filed here and stating "I find in substance the objections are not valid objections to the nature of the settlement and I can really characterize them as general boilerplate objections without anything real specific with regard to why this particular settlement is somehow unfair to the class and the class members").[5]

In addition, Mr. Brown's objection here is a boilerplate "cut and paste" version of another serial objector's objection filed in an antitrust case in the Northern District of Ohio (Suppl. Berger Decl., Ex. 9), and virtually identical to an objection that Mr. Brown filed in another case in this Court just two months ago (Suppl. Berger Decl., Ex. 10). Given Mr. Brown's history, the Court should be highly skeptical of his objection here. *See O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) (internal citations and quotations omitted) ("Federal

---

[5] *See also* Suppl. Berger Decl., Exs. 6-7 [Mr. Brown's objections in *Sanofi-Aventis* and *Celestica*]. A list of all cases in which Mr. Brown has objected to settlements, and the disposition of those objections, is attached as Exhibit 8 to the Supplemental Berger Declaration. In each case, Mr. Brown either withdrew his objections or they were overruled.

6

courts are increasingly weary of professional objectors: some of the objections were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.").

With regard to the substance of his objection, none of Mr. Brown's points have merit. *First*, Mr. Brown objects to the claims administration process, arguing that it does not require attorney oversight. Suppl. Berger Decl. Ex. 3, Brown Obj. Nos. 1 & 2. This is wrong. The Stipulation provides that "[t]he Claims Administrator shall administer the Settlement including but not limited to the process of receiving, reviewing and approving or denying Claims, **under Co-Lead Counsel's supervision** and subject to the jurisdiction of the Court." ECF No. 198-1 ¶17 (emphasis added); *see also id.* ¶22 ("Co-Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.").

*Second*, Mr. Brown argues that a portion of the awarded attorneys' fees should be withheld pending a final hearing following the claims administration process. Suppl. Berger Decl. Ex. 3, Brown Obj. No. 2. Mr. Brown does not explain what harm this delayed payment seeks to remedy. Payment of attorneys' fees and expenses upon an award by the Court is a common settlement provision, and courts in this Circuit and elsewhere typically approve payment of fees when awarded. *See, e.g., In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998) ("Numerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter"); *see also In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) ("professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients").

*Third*, Mr. Brown objects to Co-Lead Counsel's request for attorneys' fees. Mr. Brown states that the "[a]ttorney fees [requested] do not depend upon how much relief is actually paid to the Class Members" (Brown Obj. No. 3), which is entirely incorrect. Here, Co-Lead Counsel are requesting a specific percentage of the $150 million actually recovered for the Class, and Defendants do not have any reversionary interest in the Settlement Fund. Mr. Brown then argues that, based on his review of docket entries, the percentage fee requested is "far too high." *Id*. No. 4. But Mr. Brown does not provide any support of a correlation between the number of docket entries in an action and the amount of work performed by the attorneys. Indeed, as detailed in the Joint Declaration, many tasks that counsel undertook did not result in any docket entries whatsoever, for example, taking and defending depositions; negotiating concerning document requests and third party discovery; and reviewing the millions of pages of documents produced. Mr. Brown also contends that "[n]o fee request is reasonable in the absence of documentation…." *Id*. No. 5. Here, Co-Lead Counsel provided extensive documentation of their work, which is set forth both in the Joint Declaration and in the supporting individual firm declarations, which contain schedules of the time spent by the attorneys and paralegals at each firm who worked on this case and their standard billing rates. This is more than sufficient.[6] *See, e.g.*, *In re Pall Corp. Class Action Attorneys' Fees Application*, 2013 WL 1702227, at *4 (E.D.N.Y. Apr. 8, 2013) ("Neither existing case law nor, frankly, the conduct of objectors' counsel in this case suggests that objectors' counsel should be provided with the detailed time

---

[6] Similarly, Mr. Brown complains that expenses "should be itemized in as much detail as possible." Brown Obj. No. 8. Here, the Joint Declaration contains a breakdown of Plaintiffs' Counsel's expenses by category. *See* ECF 206-8 at 6-7; ECF 206-9 at 7; ECF 206-10 at 6. This itemization of expenses by category is typical of what is submitted in support of requests for reimbursement of expenses in other cases. Mr. Brown does not cite any authority suggesting that more expense detail is required.

records of counsel for the class plaintiffs"); *Shapiro v. JP Morgan Chase & Co.*, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) (time need not be "exhaustively scrutinized").[7]

In sum, as discussed in the Fee Brief (ECF No. 205), the attorneys' fees requested by Co-Lead Counsel are reasonable.[8] Moreover, Mr. Brown completely ignores that four sophisticated institutional investors approved the request for fees and expenses, a fact which the Second Circuit recently found important. *Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emps. Ret. Sys.*, 814 F.3d 652, 655-56 (2d Cir. 2016). Considered with the absence of objections or exclusion requests by any institutional investor, this strongly supports the reasonableness of the request. For these reasons, Mr. Brown's objections to the fee request should be overruled.

*Fourth*, Mr. Brown objects to the proposed *cy pres* distribution procedure (Brown Obj. No. 6), but there may never be a *cy pres* distribution. A donation of leftover funds to charity would occur only after one or more full distributions of the Net Settlement Fund to Authorized Claimants; only when the funds remaining as a result of uncashed or returned checks is so small that a further distribution would not be "cost-effective;" and only after approval by the Court. *See* Notice (ECF No. 206-5, Ex. A) ¶60. *Fifth*, Mr. Brown complains that "it is unclear from the Notice who is paying for the cost of the settlement administration." Brown Obj. No. 8. Again, he is incorrect: Paragraph 38 of the Notice clearly informs the Class that the Net Settlement Fund consists of the Settlement Fund less taxes, attorneys' fees and expenses approved by the Court, and "the costs and expenses incurred in connection with providing notice to Class Members and

---

[7] Mr. Brown's objection No. 7 reads: "Attorneys' fees are disproportionate to the value of the Recovery of the Class ([s]ee [p]aragraphs 3, 4, 5, and 6 above)." Because we address his objections Nos. 3-6 above, there is nothing additional to discuss regarding this specific objection.

[8] Indeed, just yesterday, Judge Preska awarded an attorneys' fee of 21% of a $272 million settlement fund. *NECA v. Goldman, Sachs & Co.*, No. 1:08-cv-4429-LAP (S.D.N.Y. May 2, 2016) (ORDER) (ECF #97).

administering the Settlement on behalf of Class Members." Notice ¶ 38; *see also* Notice ¶ 2. Thus, the Settlement Fund bears the cost of settlement administration.

*Finally*, Mr. Brown objects to several additional items concerning non-monetary aspects of the Settlement. He complains that "[t]he Notice is inadequate in that no alleged violated statutes are referenced. . . ." Brown Obj. No. 9. This is not true. Paragraph 15 of the Notice states: "The Complaint asserted claims against [defendants] under Section 10(b) of the Securities Exchange Act of 1934 . . . and against the individual defendants under Section 20(a) of the Exchange Act." Mr. Brown objects that the Notice does not contain a "briefing schedule" and "an Objector's only remedy is to write a letter/brief setting forth objections." To the contrary, the Notice informs Class Members of the date by which they must submit written objections and also that they may appear in-person at the hearing and request to be heard. Notice at p. 2 ¶¶68-74. Mr. Brown also criticizes the fact that the Settlement does not require an admission of guilt by Defendants, as a "penalty" or a "deterrent." Brown Obj. No. 9. This misapprehends the primary purpose of private civil litigation, which is to compensate plaintiffs for harm inflicted on them, and a settlement, which almost always resolves the litigation without defendants admitting liability. Not surprisingly, Mr. Brown does not cite any case in which settlement of private, civil litigation required an admission of guilt by defendants or where the lack of an admission of guilt affected the fairness of the settlement. These additional complaints also should be overruled.

### D. CONCLUSION

For the foregoing reasons, and those set forth in their opening papers, Lead Plaintiffs and Co-Lead Counsel respectfully request that the Court approve the Settlement, the Plan of Allocation, and the request for attorneys' fees and reimbursement of Litigation Expenses.

Dated: May 3, 2016                    Respectfully submitted,

| **GRANT & EISENHOFER P.A.** | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | **KESSLER TOPAZ MELTZER & CHECK LLP** |
|---|---|---|
| *s/ Daniel L. Berger* | *s/ Salvatore Graziano* | *s/ David Kessler* |
| Daniel L. Berger | Max W. Berger | David Kessler |
| Jeffrey A. Almeida | Salvatore Graziano | Andrew L. Zivitz |
| 485 Lexington Avenue | 1251 Avenue of the Americas | 280 King of Prussia Road |
| New York, NY 10017 | New York, NY 10020 | Radnor, PA 19087 |
| Telephone: (646) 722-8505 | Telephone: (212) 554-1400 | Telephone: (610) 667-7706 |
| Facsimile: (302) 622-7004 | Facsimile: (212) 554-1444 | Facsimile: (610) 667-7056 |
| dberger@gelaw.com | mwb@blbglaw.com | dkessler@ktmc.com |
| jalmeida@gelaw.com | salvatore@blbglaw.com | azivitz@ktmc.com |

*Co-Lead Counsel for Lead Plaintiffs and the Class*

*Additional Counsel:*

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
Keith Ketterling
Keith Dubanevich
209 Southwest Oak Street
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
KKetterling@stollberne.com
KDubanevich@stollberne.com

*Special Assistant Attorneys General and Counsel the State of Oregon by and through the Oregon State Treasurer on behalf of the Common School Fund and, together with the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund*

**BRENNAN, MANNA & DIAMOND, LLC**
Jack T. Diamond
Donald W. Davis, Jr.
75 East Market Street
Akron, Ohio 44308
Telephone: (330) 253-5060
Facsimile: (330) 253-1977
jtdiamond@bmdllc.com
dwdavis@bmdllc.com

*Special Counsel for Lead Plaintiff Ohio Public Employees Retirement System*