# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

IN RE JPMORGAN CHASE & CO.
SECURITIES LITIGATION

Master File No. 1:12-cv-03852-GBD

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
## MOTION FOR AN ORDER REQUIRING POSTING OF AN APPEAL BOND

**GRANT & EISENHOFER P.A.**
Daniel L. Berger
Jeffrey A. Almeida
485 Lexington Avenue
New York, NY 10017
Telephone:  (646) 722-8505
Facsimile:  (302) 622-7004

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano
John Rizio-Hamilton
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

**KESSLER TOPAZ MELTZER & CHECK LLP**
David Kessler
Andrew L. Zivitz
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

Dated:  August 8, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT ........................................................................................................... 5

        A.      Legal Standard for Imposition of an Appeal Bond .................................... 5

                1.      The Objector Appears to Have the Ability to Post the Bond ....................... 5

                2.      There is a Strong Likelihood That the Objector Will Not Pay Costs
                        if His Appeal Is Unsuccessful ......................................................... 6

                3.      The Appeal is Without Merit ......................................................... 7

                4.      Bad Faith or Vexatious Conduct ................................................... 17

        B.      Amount of the Bond ................................................................................. 19

                1.      The Bond Should Include $50,000 to Cover the Administrative
                        Costs of Delay Associated with Brown's Frivolous Appeal .................... 20

                2.      The Bond Should Include $5,000 for Appeal Costs ............................... 22

III.    CONCLUSION ....................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**                                                                  **Page(s)**

*Adsani v. Miller*,
    139 F.3d 67 (2d Cir. 1998)...............................................................................5, 6, 7

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ..................................................................................12

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
    No. 03-1519 (AET), slip op. (D.N.J. Jan. 30, 2013)..............................................14

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. 2013) ...........................................................................15

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
    695 F. Supp. 2d 157 (E.D. Pa. 2010) .....................................................................23

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
    No. 08 Civ. 411 (NRB), 2012 WL 260231 (S.D.N.Y. Jan. 12, 2012).....................6

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..................13

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006)...................................................................................11

*Baker v. Urban Outfitters, Inc.*,
    No. 01 CV 5440 LAP, 2006 WL 3635392 (S.D.N.Y. Dec. 12, 2006) ...............5, 23

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
    148 F. Supp. 3d 303 (S.D.N.Y. 2015).....................................................................14

*Barnes v. FleetBoston Fin. Corp.*,
    No. 01-10395-NG, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) .........................20

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
    No. 09-md-2023(BMC), 2013 WL 4735641 (E.D.N.Y. Sept. 3, 2013) ...............5, 6

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, Inc.*,
    No. 09 Civ. 686 (SAS), 2012 WL 2064907 (S.D.N.Y. June 7, 2012)....................14

*Berry v. Deutsche Bank Trust Co. Americas*,
    632 F. Supp. 2d 300 (S.D.N.Y. 2009)......................................................................5

*In re Broadcom Corp. Sec. Litig.*,
    No. 01-275, 2005 U.S. Dist. LEXIS 41993 (C.D. Cal. Sept. 14, 2005) .................14

*In re Broadcom Corp. Sec. Litig.*,
   No. SACV 01-275 DT (MLGx),
   2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005) ......................................21

*In re Cardizem CD Antitrust Litig.*,
   391 F.3d 812 (6th Cir. 2004) ......................................................................20

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...............................................2, 18

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013).....................................................8

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   MDL 1361, 2003 WL 22417252 (D. Me. Oct.7, 2003).............................21

*In re Computer Assocs. Class Action Sec. Litig.*,
   No. 98 Civ. 4839 (TCP), 2003 WL 25770761 (E.D.N.Y. Dec. 8, 2003) ...............14

*In re Comverse Tech., Inc., Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...............14

*In re Currency Conversion Fee Antitrust Litig.*,
   MDL No. 1409, 2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) ...................................4, 5, 6, 23

*In re DaimlerChrysler AG Sec. Litig.*,
   No. 00-0993 (KAJ), slip op. (D. Del. Feb. 5, 2004) ...............................................14

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) .........................................................................9, 10

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ...............................................................10

*Dennings v. Clearwire Corp.*,
   928 F. Supp. 2d 1270 (W.D. Wash. 2013).....................................................21

*In re Deutsche Telekom AG Sec. Litig.*,
   No. 00-CV-9475 (NRB), 2005 WL 7984326 (S.D.N.Y. June 9, 2005) ...............14

*Feder v. Elec. Data Sys. Corp.*,
   248 F. App'x 579 (5th Cir. 2007) .....................................................................9

*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emps. Ret. Sys.*,
   814 F.3d 652 (2d Cir. 2016).........................................................................15

*Freedman v. Weatherford Int'l Ltd.*,
   No. 12 Civ. 2121 (LAK), 2015 WL 7454142 (S.D.N.Y. Nov. 23, 2015) ...............14

iii

*Gay v. Tom's of Maine, Inc.*,
   No. 0:14-cv-60604-KMM, 2016 WL 3577504 (S.D. Fla. Mar. 11, 2016) ........................4, 18

*In re Gen. Elec. Co. Sec. Litig.*,
   998 F. Supp. 2d 145 (S.D.N.Y. 2014) .......................................................................... *passim*

*Greene v. United States*,
   13 F.3d 577 (2d Cir. 1994) ..................................................................................................10

*Gurary v. Winehouse*,
   190 F.3d 37 (2d Cir.1999) ...................................................................................................10

*In re Initial Pub. Offering Sec. Litig.*,
   728 F. Supp. 2d 289 (S.D.N.Y. 2010) .................................................................2, 6, 17, 19

*In re Initial Pub. Offering Sec. Litig.*,
   No. 21 MC 92 (SAS), 2011 WL 3792825 (S.D.N.Y. Aug. 25, 2011) ....................................8

*In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*,
   No. 08-2177 (DMC) (JAD), slip op. (D.N.J. Jan. 8, 2014) ...................................................23

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................................14

*Miletak v. Allstate Ins. Co.*,
   No. C 06-03778 JW, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012) ..............................20, 23

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 124 (S.D.N.Y. 1999) ........................................................................................20

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................11

*In re Nutella Mktg. & Sales Practices*,
   No. 11-1086 (FLW), 2012 WL 6013276 (D.N.J. Nov. 20, 2012),
   *aff'd* 589 F. App'x 53 (3d Cir. 2014) ...................................................................................20

*In re Pall Corp. Class Action Attorneys' Fees Application*,
   No. CV 07-3359 (JS) (GRB), 2013 WL 1702227 (E.D.N.Y. Apr. 8, 2013) ..........................13

*Pedraza v. United Guar. Corp.*,
   313 F.3d 1323 (11th Cir. 2002) ............................................................................................5

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   520 F. Supp. 2d 274 (D. Mass. 2007) ..............................................................................20, 21

*In re Polyurethane Foam Antitrust Litig.*,
   No. 1:10 MD 2196, 2016 WL 1452005 (N.D. Ohio Apr. 13, 2016) ......................................2

*In re Polyurethane Foam Antitrust Litig.*,
  No. 1:10 MD 2196, 2016 WL 320182 (N.D. Ohio Jan. 27, 2016) .........................................15

*In re Porsche Cars N. Am., Inc. Plastic Collant Prods. Liab. Litig.*,
  No. 2:11-md-2233, 2014 WL 2931465 (S.D. Ohio June 30, 2014) ........................................5

*In re Rite Aid Corp. Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005) ....................................................................................14

*Roberts v. Electrolux Home Prods., Inc.*,
  No. SACV12–1644–CAS, 2014 WL 4568632 (C.D. Cal. Sept. 11, 2014) .......................4, 19

*In re Sanofi-Aventis Sec. Litig.*,
  No. 1:07-cv-10279-GBD-FM, slip op. (S.D.N.Y. Jan. 22, 2014), ECF No. 281 ....................3

*In re Sanofi-Aventis Sec. Litig.*,
  No. 1:07-cv-10279-GBD-FM, slip op. (S.D.N.Y. Jan. 22, 2014), ECF No. 282 ....................3

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
  No. 08-397 (DMC) (JAD), slip op. (D.N.J. Dec. 30, 2013) ...................................................23

*In re Schering-Plough Corp. Sec. Litig.*,
  No. 01-CV-0829 (KSH/MF), 2009 WL 5218066 (D.N.J. Dec. 31, 2009) .............................14

*In re Se. Milk Antitrust Litig.*,
  No. 2:07-CV-208, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) ......................................13

*Shapiro v. JP Morgan Chase & Co.*,
  No. 11 Civ. 8331 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)................................14

*Silverman v. Motorola, Inc.*,
  No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012),
  *aff'd*, 739 F.3d 956 (7th Cir. 2013)......................................................................................14

*Stillman v. InService Am. Inc.*,
  838 F. Supp. 2d 138 (S.D.N.Y. 2011).....................................................................................19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 3:07-MD-1827 SI, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) .................................11

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
  No. 11-MD-2247 ADM/JJK, 2012 WL 3984542 (D. Minn. Sept. 11, 2012).................20, 21

*Venen v. Sweet*,
  758 F.2d 117 (3d Cir. 1985)......................................................................................................5

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
  No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513 (D. Nev. Mar. 8, 2010) .........................21

**Rules**

Fed. R. App. P. 7 ................................................................................................ *passim*

Fed. R. App. P. 38 ...................................................................................................21

Fed. R. App. P. 39 ...........................................................................................1, 4, 22

Lead Plaintiffs respectfully submit this memorandum of law in support of their motion for an order requiring objector Jeff M. Brown ("Brown" or the "Objector") to post an appeal bond of $55,000 under Fed. R. App. P. 7 to cover costs associated with the Objector's appeal of this Court's denial of his objections to the $150 million class action Settlement, Plan of Allocation, and award of attorneys' fees and Litigation Expenses.[1]  The proposed bond includes $50,000 for additional estimated administrative costs that will be incurred while the appeal is pending, and $5,000 for taxable costs under Fed. R. App. P. 39.

## I.    INTRODUCTION

This is a paradigmatic case for requiring an appellate bond under Fed. R. App. P. 7.  As discussed below, the Objector's appeal stands virtually no chance of success and is being pursued solely for the self-interest of a "professional objector."  The Objector's pursuit of his frivolous appeal will, nevertheless, impose significant costs on the Class, and delay their receipt of the settlement proceeds to which they are entitled.  Accordingly, if the Objector wishes to prosecute his appeal under these circumstances, he should be required to post a bond to insure that the unwarranted costs of his meritless appeal will not be borne by the Class.

As detailed in Lead Plaintiffs' prior submissions, the $150 million Settlement of this litigation was achieved after years of intense effort and is an excellent result for the Class.  This is reflected in the response of the Class, which has been overwhelmingly positive.  Not a single institutional investor objected to any aspect of the Settlement and none of the 50 States Attorneys' General who received notice of the Settlement pursuant to the Class Action Fairness Act objected. *See* ECF No. 207 at 2.  The only objections were filed by two individuals – Brown and Kenneth

---

[1] Unless otherwise indicated, capitalized terms have the meanings ascribed in the Stipulation and Agreement of Settlement, dated December 18, 2015 (ECF No. 198-1) ("Stipulation").

John Babin.  Significantly, Brown – the only objector to file an appeal – has a long history of filing frivolous objections *and* appeals.[2]  As detailed below, in addition to this case, Brown has objected to at least twelve (12) other class action settlements, and each of his objections has either been overruled, withdrawn or dismissed on appeal.

The objections that Brown asserted in this case mirror boilerplate arguments that he has made in the past and that courts – including this Court – have repeatedly found to be without merit.  In fact, in the past year alone, Brown has made and lost virtually all of the same objections that this Court rejected here.  For instance, in *In re Celestica, Inc. Securities Litigation*, No. 1:07-cv-312-GBD-MHD ("*Celestica*"), Hr'g Tr. (S.D.N.Y. July 28, 2015), ECF No. 269, this Court overruled Brown's boilerplate objection, stating, "I find in substance the objections are not valid objections to the nature of the settlement and I can really characterize them as general boilerplate objections without anything real specific with regard to why this particular settlement is somehow unfair to the class and the class members." *Id*. at 24.  Other courts have also overruled Brown's similar, recycled objections in *Department of the Treasury of the State of New Jersey and Its Division of Investment, v. Cliffs Natural Resources, Inc.*, No. 1:14-cv-1031-DAP ("*Cliffs Natural*") (N.D. Ohio June 30, 2016), ECF Nos. 105 and 108-110, *In re Merck & Co., Inc. Securities, Derivative and ERISA Litigation*, No. 2:05-cv-01151-SRC-CLW ("*Merck*") (D.N.J. June 28,

---

[2] As demonstrated in Lead Plaintiffs' reply papers, Brown is a serial objector.  *See* ECF No. 207 at 6; ECF No. 208.  A serial objector's "sole purpose is to obtain a fee by objecting to whatever aspects of the [s]ettlement they can latch onto." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011).   "[P]rofessional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients." *In re Initial Pub. Offering Sec. Litig.* ("*IPO*"), 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010); *see also In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2016 WL 1452005, at *2 (N.D. Ohio Apr. 13, 2016) ("The serial objector's ultimate goal is extortion.").

2016), ECF Nos. 843 and 896, *ITT Educational Services, Inc. Securities Litigation*, No. 13-cv-1620-JPO ("*ITT Education*") (S.D.N.Y. Mar. 8, 2016), ECF Nos. 89 and 94-95, and *Freedman v. Weatherford International Ltd.*, No. 12-cv-02121-LAK-JCF ("*Weatherford*") (S.D.N.Y. Nov. 23, 2015), ECF Nos. 206, 212 and 219.[3]   For the Court's convenience Brown's nearly identical objections filed in this case, *Celestica*, *Cliffs Natural*, *Merck*, *ITT Education* and *Weatherford* are attached hereto as Exhibits 1 to 6.  Not only are Brown's objections meritless, he has also waived his right to object or appeal by failing to provide the Court with the information necessary to establish his standing in connection with his original objection as required by the Court's Preliminary Approval Order and Notice.

Given the meritless nature of his objections, Brown's failure to comply with the Court's Preliminary Approval Order, and the deferential standard of review by the appellate court, Brown's prospects of obtaining appellate reversal of this Court's orders in connection with the Settlement of this case are virtually nonexistent.

Tellingly, Brown is being represented on appeal by Patrick S. Sweeney ("Sweeney"), another serial objector who also has a long history of filing frivolous objections to class action settlements and attorneys' fee requests.  For example, earlier this year Chief Judge K. Michael Moore of the United States District Court for the Southern District of Florida characterized Sweeney as a "professional objector," stating that "[i]t is apparent that Sweeney . . . [is] unfamiliar

---

[3] *See also In re Sanofi-Aventis Sec. Litig.*, No. 1:07-cv-10279-GBD-FM ("*Sanofi-Aventis*"), slip op. at 6 (S.D.N.Y. Jan. 22, 2014), ECF No. 281 ("The Court has considered the objection filed by Jeffrey M. Brown, and finds that he has not established his standing as a Class Member to bring the objection.  Nonetheless, the Court has considered the merits of the objection and finds that even if Mr. Brown had standing, his objection is without merit.  The objection is therefore overruled in its entirety."); *Sanofi-Aventis*, slip op. at 2 (S.D.N.Y. Jan. 22, 2014), ECF No. 282 ("Even if the Court were to consider [Brown's] objection, it is without merit and, therefore, overruled in its entirety.").

with the actual pleadings and submissions in this case, as well as the substantive terms of the settlement at issue," and finding his objections to be "facially specious," "without merit," and "the same recycled, boilerplate arguments [he has] previously (and unsuccessfully) used in the past in a number of other class action settlements." *Gay v. Tom's of Maine, Inc.*, No. 0:14-cv-60604-KMM, 2016 WL 3577504, at *1 (S.D. Fla. Mar. 11, 2016).[4]

Unfortunately for Class Members, Brown's baseless appeal carries very real costs. First, merely by its pendency, Brown's appeal will most likely delay the distribution of the settlement proceeds to Class Members who have already waited years to recover compensation for their losses, thereby depriving them of the use of those funds. Second, Co-Lead Counsel will spend many thousands of dollars in unnecessary costs litigating Brown's baseless appeal. *See* Fed. R. App. P. 39(e) (listing costs taxable by district court for benefit of prevailing party on appeal). Finally, the appeal will impose estimated costs of approximately $50,000 on the Class for additional settlement administration costs (*see* Declaration of Justin R. Hughes in Support of Lead Plaintiffs' Motion for an Order Requiring Posting of an Appeal Bond (the "Hughes Decl.") at ¶ 3), thus reducing the Settlement proceeds available for distribution to the Class.

While the Court cannot force Brown to withdraw his baseless appeal, it can make sure that Brown – and not the Class – bears the costs associated with it. It is under precisely these circumstances where a Court should invoke Fed. R. App. P. 7. *See In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2010 WL 1253741, at *1 (S.D.N.Y. Mar. 5, 2010) ("The purpose of this rule is to protect the appellee from the risk of nonpayment by the appellant, if the appellee

---

[4] *See also Roberts v. Electrolux Home Prods., Inc.*, No. SACV12–1644–CAS (VBKx), 2014 WL 4568632, at *11-15 (C.D. Cal. Sept. 11, 2014) (noting that Sweeney is a "professional objector," and that his objections were "meritless in all respects," "not made for the purpose of benefitting the Class," and "appear to be made for the improper purpose of delaying the Settlement to extract a fee").

wins the appeal.").

　　For these reasons, and those set forth below, Lead Plaintiffs respectfully request that this Court require Brown to post an appeal bond in the amount of $55,000.

## II.　ARGUMENT

### A.　Legal Standard for Imposition of an Appeal Bond

　　Federal Rule of Appellate Procedure 7 empowers district courts to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7; *see also Venen v. Sweet*, 758 F.2d 117, 120 n.2 (3d Cir. 1985) (district court retains jurisdiction "during the pendency of an appeal" to order appeal bond). The purpose of a bond is to protect the appellee against the risk of non-payment of costs by an unsuccessful appellant. *See Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998); *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002); *Currency Conversion Fee*, 2010 WL 1253741, at *1. In evaluating whether to grant a motion for an appeal bond, "courts typically consider a variety of factors, including (1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *Baker v. Urban Outfitters, Inc.*, No. 01 CV 5440 LAP, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006); *Berry v. Deutsche Bank Trust Co. Americas*, 632 F. Supp. 2d 300, 307 (S.D.N.Y. 2009). As demonstrated below, each of these factors militates in favor of the imposition of an appellate bond in the instant case.

### 1.　The Objector Appears to Have the Ability to Post the Bond

　　"It is [the appellants'] burden to demonstrate that the bond would constitute a barrier to her appeal." *In re Porsche Cars N. Am., Inc. Plastic Collant Prods. Liab. Litig.*, No. 2:11-md-2233, 2014 WL 2931465, at *2 (S.D. Ohio June 30, 2014); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.* ("*Bayer Aspirin*"), No. 09-md-2023(BMC), 2013 WL 4735641, at

*1 (E.D.N.Y. Sept. 3, 2013).  Absent such a showing, the objector's ability to post a bond "is presumed."  *IPO*, 728 F. Supp. 2d at 293; *see also Adsani*, 139 F.3d at 79 ("[W]e find that without any showing of her financial hardship, the bond imposed on Adsani is not an impermissible barrier to appeal . . ."); *Bayer Aspirin*, 2013 WL 4735641, at *1 ("Having provided no financial information, the objectors have conceded this issue and have the financial ability to post a bond.").

Here, the Objector is a named partner at a Florida law firm, he has paid the $505 appellate filing fee and he has not sought to proceed *in forma pauperis.  See In re JPMorgan Chase & Co. Sec. Litig.*, No. 1:12-cv-03852-GBD (S.D.N.Y. July 6, 2016) (docket entry indicating payment of appeal fees by Objector).[5]  Furthermore, Brown has pursued near identical appeals, paying the required fees and costs associated therewith, in a number of other cases over the past 10 years. Accordingly, it appears that the posting of a bond will not be a barrier to the Objector's appeal.

### 2. There is a Strong Likelihood That the Objector Will Not Pay Costs if His Appeal Is Unsuccessful

The risk of nonpayment has been characterized as "perhaps the most important" factor given Rule 7's focus on protecting the appellee.  *In re Ambac Fin. Grp., Inc. Sec. Litig.*, No. 08 Civ. 411 (NRB), 2012 WL 260231, at *2 (S.D.N.Y. Jan. 12, 2012).  In evaluating this factor, many courts consider whether the Objector is within the court's jurisdiction.  Where the Objector resides in another part of the country, courts have found that this factor weighs in favor of requiring the bond.  *See Bayer Aspirin*, 2013 WL 4735641, at *1 (finding a risk of nonpayment when the appellant lived in Texas and the plaintiffs' counsel was located in New York and Illinois); *Currency Conversion Fee*, 2010 WL 1253741, at *2 (finding a significant risk of non-payment where appellants were dispersed around the country, class counsel would need to institute

---

[5] *See also* http://www.lavallebrown.com/ (Objector's law firm's website).

numerous collection actions to recover their costs, and no appellant offered to guarantee payment of the costs that might be assessed against them).

As set forth above, Brown is a named partner in a Boca Raton, Florida law firm and, as such, most likely resides in Florida.[6]  Consequently, collection of any costs will be economically and procedurally difficult and this factor weighs in favor of requiring a bond.

### 3.      The Appeal is Without Merit

"A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal."  *Adsani*, 139 F.3d at 79.  Here, the Objector's appeal stands virtually no chance of success.  This is because the Objector has waived his right to bring the appeal, and his objections have been repeatedly rejected by this and other courts.

As set forth in the Preliminary Approval Order, in order for an objection to be considered, the objector was required to submit documents sufficient to establish membership in the Class. Indeed, the Preliminary Approval Order specifically provides:

> Any objections, filings and other submissions by the objecting Class Member:  . . . (c) must include documents sufficient to prove membership in the Class, including the number of shares of JPMorgan common stock that the objecting Class Member purchased/acquired and/or sold during the Class Period, as well as the dates and prices of each such purchase/acquisition and sale. . . .

> Any Class Member who or which does not make his, her or its objection in the manner provided herein shall be deemed to have ***waived*** his, her or its right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and shall be forever barred and foreclosed from objecting to

---

[6] It should be noted that on his objection Brown listed ***his*** address as 2590 Richardson St., Madison, Wisconsin 53711, which is the address of his appellate counsel, Patrick S. Sweeney.  Similarly, Brown listed his email address on the "pro se" objection as patrickshanesweeney@gmail.com. *Compare* Ex. 1 at 4 (Brown Objection) *with* Ex. 7 (Patrick S. Sweeney's *pro hac vice* application submitted in the Second Circuit).  In any event, regardless of whether he resides in Florida or Wisconsin, there is no indication in the record that Brown resides within this Court's jurisdiction.

the fairness, reasonableness or adequacy of the Settlement, the Plan of Allocation or the requested attorneys' fees and Litigation Expenses, or from otherwise being heard concerning the Settlement, the Plan of Allocation or the requested attorneys' fees and Litigation Expenses in this or any other proceeding.

ECF No. 201 at ¶¶ 15-16 (emphasis added).  The Notice mailed to potential Class Members (ECF No. 206-5, Ex. A), set forth the identical requirement that objections include documentation sufficient to prove the objector's membership in the Class (Notice ¶ 71) and similarly stated that "**any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.**"  Notice ¶ 76 (emphasis in original).

Despite the plain language of the Preliminary Approval Order and the Notice and Brown's history of filing objections in cases with identical objection requirements, Brown failed to provide any such proof; rather, Brown stated in his objection:

### PROOF OF MEMBERSHIP IN THE CLASS

Upon information and belief Jeff M. Brown ("Objector") has reviewed that certain notice of class action and proposed settlement which is dated February 12, 2016 (the "Notice").  As a result, he believes that he is a member of the class, as it is defined in that Notice.  He /intend [sic] to file a claim in this matter on or before June 13, 2016 (Claim deadline according to the Notice).  His address, email address and telephone number are listed at the conclusion of this objection.

Ex. 1 at 1 (emphasis in the original).

The foregoing statement was insufficient to establish his membership in the Class because it *did not contain the information and documentation mandated by the Preliminary Approval Order*.  *See In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2011 WL 3792825, at *2 (S.D.N.Y. Aug. 25, 2011) (objector who submitted unsworn, unauthenticated tax form did not establish class membership); *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 379 (S.D.N.Y.

8

2013) (excluding objections "from individuals who did not provide the required evidence of class membership or who provided evidence indicating they were not class members"); *Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579, 581 (5th Cir. 2007) (objector's "unsupported claim of ownership in his objection letter, and the statements made by his attorney at the settlement hearing" while "produc[ing] no evidence substantiating his membership in the class" was insufficient to establish standing because "[a]llowing someone to object to settlement in a class action based on this sort of weak, unsubstantiated evidence would inject a great deal of unjustified uncertainty into the settlement process").

Having failed to comply with the Preliminary Approval Order, Brown "waived his . . . right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and [was] forever barred and foreclosed from objecting to the fairness, reasonableness or adequacy of the Settlement, the Plan of Allocation or the requested attorneys' fees and Litigation Expenses, or from otherwise being heard concerning the Settlement, the Plan of Allocation or the requested attorneys' fees and Litigation Expenses in this or any other proceeding."  Preliminary Approval Order (ECF No. 201) at ¶ 16.  The Court's Preliminary Approval Order was properly issued, and the Objector's failure to comply means that he waived his right to object and appeal.  *See In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014) ("Accordingly, because the BCA Objectors did not substantiate their membership in this class, the district court did not abuse its discretion under Rule 23(d)(1)(A) and Rule 23(d)(1)(C) in finding that the BCA Objectors 'forfeited and

waived' their objections to the class certification and settlement approval. We therefore will not consider the merits of their objections.").[7]

Moreover, even if the Second Circuit were to consider the appeal, Brown's arguments are plainly without merit. Although Brown has not yet filed his opening brief, the issues he raised below were properly overruled by this Court and "it is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994); *see also Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir.1999) ("Having failed to make the present argument to the district court, plaintiff will not be heard to advance it here."). Brown's recycled, boilerplate objections have been rejected by Your Honor in this case, in *Celestica* and *Sanofi-Aventis*, as well as by Judge Chesler in *Merck*, slip op. (D.N.J. June 28, 2016) (ECF No. 896); Judge Polster in *Cliffs Natural* (N.D. Ohio June 30, 2016) (ECF Nos. 108-110); Judge Oetken in *ITT Educational* (S.D.N.Y. Mar. 8, 2016) (ECF Nos. 94-95); and Judge Kaplan in *Weatherford* (S.D.N.Y. Nov. 4 and 23, 2015) (ECF Nos. 212 and 219). Thus, it is highly doubtful that the Second Circuit will reach a different conclusion under the abuse of discretion standard.

Furthermore, Brown's arguments are not only well-worn, they are also factually incorrect and legally unsupported. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007)

---

[7] Brown ultimately mailed his claim form and supporting documentation demonstrating a Class Period purchase of 100 shares of JPMorgan common stock on June 13, 2016, more than a month after the May 3, 2016 Settlement Fairness Hearing. *See* Ex. 8. (Mr. Brown's Claim Form and supporting documentation have been redacted to remove his telephone number, financial account number and investment information unrelated to JPMorgan stock.) This filing does not alter the fact that Mr. Brown failed to comply with the Preliminary Approval Order or otherwise seek relief from the Court's Order. *See In re Deepwater Horizon*, 739 F.3d at 809 ("Although a district court's discretion under Rule 23(d) is 'not unlimited,' the district court plainly acted within its discretion in finding that the BCA Objectors forfeited and waived their objections by disobeying the reasonable requirements of the Preliminary Approval Order.").

("General objections without factual or legal substantiation do not carry weight.") (citation omitted).  *First*, Brown objects to the claims administration process, arguing that it does not require attorney oversight.  *See* Ex. 1 at ¶¶ 1, 2.  This is wrong.  The Stipulation provides that "[t]he Claims Administrator shall administer the Settlement including but not limited to the process of receiving, reviewing and approving or denying Claims, ***under Co-Lead Counsel's supervision*** and subject to the jurisdiction of the Court."  Stipulation ¶ 17 (emphasis added); *see also id.* ¶ 22 ("Co-Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.").

*Second*, Brown argues that a portion of the Court-awarded attorneys' fees should be withheld pending a final hearing following the claims administration process.  *See* Ex. 1 at ¶ 2.  Brown does not, however, explain what harm this delayed payment seeks to remedy.  Payment of attorneys' fees and expenses upon an award by the Court is a common settlement provision, and "[n]umerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter."  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998) (collecting cases); *see also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 174-75 (3d Cir. 2006) (rejecting objectors' argument that "a portion of the attorneys' fees should be withheld pending payment of claims to class members" because the district court had found that "there was no indication class counsel would stop working diligently on behalf of the class" and the settlement amount was fixed, not contingent on the claims process); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-MD-1827 SI, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) ("Federal courts, including this Court and others in this District, routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions.") (collecting cases).

*Third*, Brown objects to Co-Lead Counsel's request for attorneys' fees.  The objection states that the "[a]ttorney fees [requested] do not depend upon how much relief is actually paid to the Class Members."  Ex. 1 at ¶ 3.  Once again, this is entirely wrong.  Co-Lead Counsel requested, and the Court ordered, a specific percentage of the $150 million actually recovered for the Class, and Defendants do not have any reversionary interest in the Settlement Fund.  *See* Stipulation ¶ 12 ("The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever . . . .").

*Fourth*, Brown argues that, based on his review of docket entries, the percentage fee requested is "far too high."  Ex. 1 at ¶ 4.  Brown does not, however, provide any support for his assertion of a correlation between the number of docket entries in an action and the amount of work performed by the attorneys.  Indeed, as detailed in the Joint Declaration of Daniel L. Berger, Salvatore J. Graziano, and Andrew L. Zivitz in Support of (A) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (B) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 206) ("Joint Declaration"), many tasks that counsel undertook did not result in any docket entries whatsoever. These included, for example, taking and defending depositions; negotiating document requests and third-party discovery; working with various experts; and reviewing the millions of pages of documents produced by Defendants and third parties.  It is a vast oversimplification of the litigation process to count the number of docket entries and arrive at some assumption as to the time and effort that was incurred in this case.  This is especially true with complex securities class actions such as this one, where the plaintiffs face tremendous legal obstacles that are not present in other

12

simpler cases.  *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

*Fifth*, Brown contends that "[n]o fee request is reasonable in the absence of documentation . . . ." Ex. 1 at ¶ 5. Yet, Co-Lead Counsel provided extensive documentation of their work, which was set forth both in the Joint Declaration and in the supporting individual firm declarations.  In fact, the individual firm declarations contained schedules of the time spent by the attorneys, paralegals and other professional support staff at each firm who worked on this case and their standard billing rates.  *See* ECF Nos. 206-7 to 206-11.   Numerous courts have held that this is more than sufficient.[8]  *See In re Pall Corp. Class Action Attorneys' Fees Application*, No. CV 07-3359 (JS) (GRB), 2013 WL 1702227, at *4 (E.D.N.Y. Apr. 8, 2013) ("Neither existing case law nor, frankly, the conduct of objectors' counsel in this case suggests that objectors' counsel

---

[8] Similarly, Brown complains that expenses "should be itemized in as much detail as possible." Ex. 1 at ¶ 8. Here, the Joint Declaration contained a breakdown of Plaintiffs' Counsel's expenses by category.  *See* ECF No. 206-12; *see also* ECF No. 206-8 at 6-7; ECF No. 206-9 at 7; ECF No. 206-10 at 6.  This itemization of expenses by category is typical of what is submitted in support of requests for reimbursement of expenses in other similar cases and Brown does not cite any authority suggesting that more expense detail is required.  *See In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2013 WL 2155387 at *8 (E.D. Tenn. May 17, 2013) ("Although the declarations submitted by class counsel are not itemizations of all of the expenses incurred but rather an aggregate listing of the expenses for each category, the Court finds the declarations submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case and will approve payment to class counsel from the common settlement fund in the amount of $798,237.66 as reimbursement for their out-of-pocket expenses.").

should be provided with the detailed time records of counsel for the class plaintiffs") (citation

omitted); *Shapiro v. JP Morgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666,

at *24 (S.D.N.Y. Mar. 24, 2014) (time need not be "exhaustively scrutinized").

    *Sixth*, without citing a single authority or case, Brown posits that the "[a]ttorneys' fees are

disproportionate to the value of the Recovery of the Class ([s]ee [p]aragraphs 3, 4, 5, and 6 above)."

Ex. 1 at ¶ 7.  Once again Brown is wrong.  The Court awarded attorneys' fees in the amount of

21% of the Settlement Fund, an amount which is well within the range of awards typically

approved for settlements of similar size.  *See, e.g.*, *Freedman v. Weatherford Int'l Ltd.*, No. 12

Civ. 2121 (LAK), 2015 WL 7454142, at *2 (S.D.N.Y. Nov. 23, 2015) (awarding approximately

20.9% of $120 million settlement fund); *In re Comverse Tech., Inc., Sec. Litig.*, No. 06-CV-1825

(NGG) (RER), 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) (awarding 25% of $225 million

settlement fund); *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, Inc.*, No. 09 Civ.

686 (SAS), 2012 WL 2064907, at *1-2 (S.D.N.Y. June 7, 2012) (awarding 25% of $150 million

settlement fund).[9]  In addition, four sophisticated institutional investors approved the request for

---

[9] *See also In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 148 F. Supp. 3d 303,
305 (S.D.N.Y. 2015) (awarding 25% of $180 million settlement fund); *Alaska Elec. Pension Fund
v. Pharmacia Corp.,* No. 03-1519 (AET), slip op. at 4 (D.N.J. Jan. 30, 2013), ECF No. 405
(awarding 27.5% of $164 million settlement fund); *Silverman v. Motorola, Inc.,* No. 07 C 4507,
2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (awarding 27.5% of $200 million settlement
fund), *aff'd*, 739 F.3d 956, 958-59 (7th Cir. 2013); *In re Schering-Plough Corp. Sec. Litig.*, No.
01-CV-0829 (KSH/MF), 2009 WL 5218066, at *5-6 (D.N.J. Dec. 31, 2009) (awarding 23% of
$165 million settlement fund); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 (NRB),
2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (awarding 28% of $120 million settlement fund);
*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 178 (S.D.N.Y. 2007)
(awarding 24% of $133 million settlement fund); *In re Broadcom Corp. Sec. Litig.,* No. 01-275,
2005 U.S. Dist. LEXIS 41993, at *14 (C.D. Cal. Sept. 14, 2005) (awarding 25% of $150 million
settlement fund); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 590 (E.D. Pa. 2005)
(reaffirming award of 25% of $126.6 million settlement fund); *In re DaimlerChrysler AG Sec.
Litig.*, No. 00-0993 (KAJ), slip op. at 1-2 (D. Del. Feb. 5, 2004) (awarding 22.5% of $300 million
settlement fund, net of expenses); *In re Computer Assocs. Class Action Sec. Litig.*, No. 98 Civ.

fees and expenses, a fact that the Second Circuit recently found important.  *See Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emps. Ret. Sys.*, 814 F.3d 652, 655-56 (2d Cir. 2016).

*Seventh*, Brown asserts that "[s]ome *cy pres* procedure needs to be articulated" and objects to "[a]llowing the process to be determined solely by Lead Class Counsel and Court overview." Ex. 1 at ¶ 6.  The Settlement does, however, set forth a *cy pres* procedure.  If there are any unclaimed or residual funds remaining after one or more distributions of the Net Settlement Fund to Authorized Claimants are completed, and only if the funds remaining as a result of uncashed or returned checks is so small that a further distribution would not be cost-effective (such as when the costs to conduct a subsequent distribution would exceed the remaining funds), the unclaimed balance will be donated to charity.  *See* Notice ¶ 60.  If that occurs, Lead Plaintiffs will seek the Court's approval to contribute the remaining balance "to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court."  *Id*.  This is a perfectly appropriate procedure and, in any event, identifying a *cy pres* recipient is not a condition precedent to approving the Settlement.  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 463 (S.D.N.Y. 2013) ("[T]here [is] no legal authority to support the [objector's] argument; [and] no Court in this Circuit has ever made identifying the organization to receive the residual funds a condition precedent to a Settlement approval."); *In re Polyurethane Foam Antitrust Litig*., No. 1:10 MD 2196, 2016 WL 320182, at *16 (N.D. Ohio Jan. 27, 2016) ("[C]*y pres* distributions will be made only after it is no longer economically practical to make distributions to the class, and only with this Court's approval that this *de minimis* distribution is appropriate.").  This is because "it is not certain at the time of the Agreement whether there will be

---

4839 (TCP), 2003 WL 25770761, at *4 (E.D.N.Y. Dec. 8, 2003) (awarding 25.3% of approximately $133.5 million in settlement shares).

excess funds after all distributions are made pursuant to the Plan of Allocation."  *Am. Int'l Grp.*, 293

F.R.D. at 463 (citation and modification in original omitted).

*Eighth*, Brown complains that "it is unclear from the Notice who is paying for the cost of

the settlement administration."  Ex. 1 at ¶ 8.  Once again, he is incorrect.  Paragraph 38 of the

Notice clearly informs the Class that the Net Settlement Fund consists of the Settlement Fund less

taxes, attorneys' fees and expenses approved by the Court, and "the costs and expenses incurred

in connection with providing notice to Class Members and administering the Settlement on behalf

of Class Members."  Notice ¶ 38; *see also* Notice ¶ 2.  Thus, the Settlement Fund bears the cost of

settlement administration.

*Ninth*, Brown claims that "[t]he Notice is inadequate in that no alleged violated statutes are

referenced" and the Settlement should require an admission of guilt by Defendants, as a "penalty"

or a "deterrent."  Ex. 1 at ¶ 9.  Brown again misses the mark.  Paragraph 15 of the Notice states:

"[t]he Complaint asserted claims against [defendants] under Section 10(b) of the Securities

Exchange Act of 1934 . . . and against the individual defendants under Section 20(a) of the

Exchange Act."  Moreover, the primary purpose of private civil litigation is to compensate

plaintiffs for harm inflicted on them.  Brown does not, and cannot, cite a single case in which

settlement of private, civil litigation required an admission of guilt by defendants or where the lack

of an admission of guilt affected the fairness of the settlement.

*Finally*, Brown asserts that the Notice does not contain a "briefing schedule" and "an

Objector's only remedy is to write a letter/brief setting forth objections."  Ex. 1 at ¶ 9.  This is

false.  The Notice informed Class Members of the date by which they must submit written

objections and also that they could appear in-person at the hearing and request to be heard.  *See*

Notice at 2 and ¶¶ 68-74. Furthermore, Brown was well-aware of the opportunity to appear as he

specifically stated in his objection that "he does NOT intend to appear at the Fairness Hearing." Ex. 1 at 1 (emphasis in the original).

Accordingly, Brown's waiver of his right to object, and the utter lack of merit of his objections, strongly favors imposition of an appeal bond.

### 4. Bad Faith or Vexatious Conduct

A judicial finding that the appellant engaged in "bad faith" or "vexatious conduct" supports the imposition of an appeal bond. *See, e.g., IPO*, 728 F. Supp. 2d at 294. Factors that courts consider in making this determination include a "history of vexatious conduct through frivolous settlement objections," the objector's "personal stake in this class action" and "appearing *pro se* before this Court [and then] . . . admitt[ing] that he is 'represented in this matter' by [an] attorney . . . who has been repeatedly admonished for pursuing frivolous appeals of objections to class action settlements." *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 155-56 (S.D.N.Y. 2014); *see also IPO*, 728 F. Supp. 2d at 294 (bad faith finding supported by conclusion that objection was brought by serial objectors represented by serial objectors).

Brown is a serial objector. In addition to the Settlement in this case, Brown has objected to at least twelve other class action settlements, and each of his objections have been overruled, withdrawn or dismissed on appeal:

| Case | Case No. (Court) | Outcome |
|---|---|---|
| *Larsen v. Trader Joe's Co.* | 11-cv-05188-WHO (N.D. Cal.) | Withdrew objection. |
| *In re AIG, Inc. 2008 Sec. Litig.* | 08-cv-04772-LTS-DCF (S.D.N.Y.) | Objection overruled, Brown appealed. Appeal voluntarily dismissed. |
| *In re Verifone Holdings Securities Litig.* | 07-cv-06140-EMC (N.D. Cal.) | Objection overruled, Brown appealed. Appeal voluntarily dismissed. |

| Case | Case No. (Court) | Outcome |
|------|------------------|---------|
| *In re Sanofi-Aventis Securities Litig.* | 07-cv-10279-GBD-FM (S.D.N.Y.) | Objection overruled, Brown appealed. Appeal dismissed for failure to pay filing fee. |
| *In re Sunpower Securities Litig.* | 09-cv-05473-RS (N.D. Cal.) | Withdrew objection. |
| *Dobina v. Weatherford International Ltd.* | 11-cv-01646-LAK-JCF (S.D.N.Y) | Objection overruled, Brown appealed. Appeal dismissed for failure to timely file forms. |
| *Freedman v. Weatherford International Ltd.* | 12-cv-02121-LAK-JCF (S.D.N.Y.) | Court found that Brown had not established standing to object and overruled objection to settlement on that basis, but nevertheless considered objection and found it "without merit." Brown subsequently withdrew objection before Court ruled on attorneys' fees. |
| *In re Celestica Inc. Securities Litig.* | 07-cv-00312-GBD-MHD (S.D.N.Y.) | Objection overruled. |
| *Kardonick, John David, Michael Clemins v. J.P. Morgan Chase Co.* | 10-cv-23235 (S.D. Fla.) | Objection overruled, Brown appealed. Appeal voluntarily dismissed. |
| *In re ITT Educational Services, Inc. Securities Litig.* | 13-cv-1620-JPO (S.D.N.Y.) | Withdrew objection. Court considered objections and found them to be "without merit." |
| *Dep't of the Treasury of the State of New Jersey & Its Div. of Inv., v. Cliffs Nat. Res., Inc.* | 1:14 CV 1031 (N.D. Ohio) | Objection overruled. |
| *In re Merck & Co., Inc. Securities, Derivative & ERISA Litig.* | 2:05-cv-01151-SRC-CLW (D.N.J.) | Objection overruled. Court considered objections to be "without merit." |

Brown's "history of vexatious conduct through frivolous settlement objections" strongly supports a finding of bad faith.  *Gen. Elec.*, 998 F. Supp. 2d at 155.  Such a finding is reinforced by the fact that he is represented in this matter by Sweeney, another known vexatious litigant.  *See id.*; *see also Tom's of Maine, Inc.*, 2016 WL 3577504, *1 (court characterized Sweeney as a "professional objector," stating that "[i]t is apparent that Sweeney . . . is unfamiliar with the actual

pleadings and submissions in this case, as well as the substantive terms of the settlement at issue," and finding his objections to be "facially specious," "without merit," and "the same recycled, boilerplate arguments [he] previously (and unsuccessfully) used in the past in a number of other class action settlements"); *Electrolux*, 2014 WL 4568632, at *11-15 (noting that Sweeney is a "professional objector," and that his objections were "meritless in all respects," "not made for the purpose of benefitting the Class," and "appear to be made for the improper purpose of delaying the Settlement to extract a fee"). Finally, Brown has a minimal financial stake in this litigation, having purchased only 100 shares of JPMorgan stock during the Class Period, thereby calling into question the true motivation behind his appeal. In sum, each of these factors supports a finding of bad faith and the posting of an appeal bond. *See Gen. Elec.*, 998 F. Supp. 2d at 156.[10]

Given that all four factors assessed by courts in determining whether an appeal bond is warranted strongly support Lead Plaintiffs' request, the Court should require the Objector to post a bond.

**B.     Amount of the Bond**

"It is within the district court's discretion to determine the amount and nature of the bond." *IPO*, 728 F. Supp. 2d at 292 (citation omitted). "In setting the amount of a Rule 7 Bond, a district court may 'prejudge[ ]' the case's chances on appeal." *Gen. Elec.*, 998 F. Supp. 2d at 151 (quoting *Adsani*, 139 F.3d at 79). "A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal."

---

[10] Even if the Court were to conclude otherwise with respect to this prong of the analysis, "a demonstration of 'bad faith' or even 'vexatious conduct' is not required for a bond to be awarded." *Stillman v. InService Am. Inc.*, 838 F. Supp. 2d 138, 140 (S.D.N.Y. 2011) (citing *Currency Conversion Fee*, 2010 WL 1253741, at *2).

*Id.* It is neither "bizarre [n]or anomalous for the amount of the bond to track the amount the appellee stands to have reimbursed." *Id.* at 75 (quoting *Adsani*, 139 F.3d at 75).

Here, Lead Plaintiffs seek a bond in the amount of $55,000, consisting of $50,000 for the estimated administrative costs of the delay related to the appeal and $5,000 for the taxable costs that Lead Plaintiffs may incur to litigate the appeal to a resolution.

### 1. The Bond Should Include $50,000 to Cover the Administrative Costs of Delay Associated with Brown's Frivolous Appeal

Costs securable by a Rule 7 appeal bond may include the costs attendant to the delay associated with an appeal – *i.e.*, the incremental costs imposed on the settlement administration by that delay. *See, e.g.*, *Gen. Elec.*, 998 F. Supp. 2d at 150-53, 157 (granting request for imposition of $54,700 bond, consisting of $5,700 in ordinary appellate costs and $49,000 in administrative costs); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (requiring bond including "damages resulting from the delay and/or disruption of settlement administration" caused by the appeal); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815 (6th Cir. 2004) (affirming imposition of bond that included $123,429 for "incremental administration costs" due to projected delay); *In re Nutella Mktg. & Sales Practices*, No. 11-1086 (FLW), 2012 WL 6013276, at *2-*3 (D.N.J. Nov. 20, 2012) (requiring bond including $20,000 in administrative costs that would result from delays resulting from the appeal), *aff'd* 589 F. App'x 53 (3d Cir. 2014); *In re Uponor, Inc.*, *F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *4 (D. Minn. Sept. 11, 2012) ("Costs incurred as a result of delay of a settlement caused by an appeal are recoverable under Rule 7.").[11]

---

[11] *See also In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (appealing objector required to post $61,000 bond for administrative costs that class would suffer as a result of delay in distribution from class action settlement); *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 WL 6916834, at *3 (D. Mass. Aug. 22, 2006) (requiring bond

Inclusion of the costs of delay in the amount of an appeal bond is particularly warranted, where, as here, the appeal is meritless.[12]  *See, e.g.*, *Uponor*, 2012 WL 3984542, at *5 ("The [$20,000 in] costs of additional administration should be shouldered by the Objectors, particularly given the tenuous nature of their arguments."); *Pharm. Indus.*, 520 F. Supp. 2d at 278-79 (including the costs of delay in bond where appeal was "likely to be deemed frivolous" and noting that "there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions"); *Compact Disc*, 2003 WL 22417252, at *1 ("damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included").

While the administrative costs of delay cannot be quantified with precision, the difficulty in quantifying the costs of delay does not prevent courts from estimating such costs and requiring appellees to bond them.  As one court explained in requiring a $500,000 appeal bond:

> While it is difficult to calculate with mathematical precision the duration of Objectors' appeal, or the administrative costs and interest costs to the potentially more than 3 million class members, or other costs reasonably incurred under Rule 39 of the Federal Rules of Appellate Procedure, the Court finds the sum of $500,000 . . . to be reasonable.

---

including $643,750 in costs of delay); *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012) (requiring bond consisting of $10,000 in appellate costs, as identified by Fed. R. App. P. 39(e), and $50,000 in "administrative costs," which consists of the costs incurred in order "to continue to service and respond to class members' needs pending the appeal"); *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656, at *9 (C.D. Cal. Dec. 5, 2005) ("the costs of delay are properly included in a Rule 7 bond"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL 1361, 2003 WL 22417252, at *1-2 (D. Me. Oct.7, 2003) (concluding that costs of delay or disruption of settlement may be included in Rule 7 bond and granting $35,000 appeal bond); *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1272 (W.D. Wash. 2013) (imposing bond amount including $39,150 associated with additional settlement administration costs).

[12] Fed. R. App. P. 38 allows the Court of Appeals to "award just damages and single or double costs to the appellee" if it determines an appeal is "frivolous."  Fed. R. App. P. 38.  Those damages include the incremental settlement administration costs caused by the delay from appeal, and such costs are securable by a Rule 7 appeal bond.  *See, e.g.*, *Gen. Elec.*, 998 F. Supp. 2d at 151-52.

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010).

Here, the Class will incur substantial increased administrative costs from the delay caused by Brown's appeal.  As outlined in the Hughes Declaration, these administrative costs include the costs related to: (i) maintaining the toll-free telephone number for claimants to call with questions; (ii) responding to additional Class Member telephone calls and e-mails, and processing additional correspondence (such as change-of-address forms and status requests); (iii) maintaining the settlement website; (iv) revising the website content and pre-recorded toll-free telephone hotline script, as necessary; and (v) warehousing documents and data storage

. Given that the median time from the filing of a notice of appeal to final disposition in the Second Circuit is approximately 10 months,[13] the Court-appointed Claims Administrator estimates that this delay will likely increase settlement administration costs by approximately $50,000 or more.  *See* Hughes Decl. ¶ 3.

Absent a bond to secure payment of these costs, they will in all likelihood be borne by the Class.

### 2.    The Bond Should Include $5,000 for Appeal Costs

Costs for purposes of Rule 7 include the taxable costs enumerated in Rule 39(e) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 1920, such as the "copying costs for briefs and compilation of the voluminous record."  *IPO*, 721 F. Supp. 2d at 213.  Lead Plaintiffs estimate

---

[13] *See* Statistical Table B-4 published by the Administrative Office of the U.S. Courts showing the "Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2015," available at http://www.uscourts.gov /statistics/table/b-4/judicial-business/2015/09/30 (for the Second Circuit, the median time interval between the filing of a Notice of Appeal to final disposition is 10.2 months).

that they may incur $5,000 in taxable costs during this pendency of Brown's appeal.[14]   Courts have determined that similar or substantially higher amounts were appropriate amounts for appeal bonds to secure payment of the costs of the appeal.   *See, e.g.*, *Gen. Elec.*, 998 F. Supp. 2d at 150 (imposing appeal bond including $5,700 for taxable appeal costs); *Miletak*, 2012 WL 3686785, at *2 (requiring appeal bond including $10,000 for appeal costs under Fed. R. App. P. 39(e)); *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 08-2177 (DMC) (JAD), slip op. at 2 (D.N.J. Jan. 8, 2014), ECF No. 362 (appellants ordered to post $50,000 bond that included $25,000 for appeal costs); *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 08-397 (DMC) (JAD), slip op. at 1 (D.N.J. Dec. 30, 2013), ECF No. 446 (same); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 167 (E.D. Pa. 2010) (appellants ordered to post bond of $25,000 for appeal costs); *Currency Conversion Fee*, 2010 WL 1253741, at *2-3 (appellants ordered to post bond of $50,000 for taxable costs on appeal); *Baker*, 2006 WL 3635392, at *2 (appellants ordered to post bond of $50,000 for appeal costs).

## III.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that this Court require the Objector to post an appeal bond of $55,000 within seven (7) calendar days of the date the Order is issued.

---

[14] Lead Plaintiffs reserve the right to seek additional costs at the appropriate time.

Dated:  August 8, 2016                              Respectfully submitted,

| **GRANT & EISENHOFER P.A.** | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | **KESSLER TOPAZ MELTZER & CHECK LLP** |
|---|---|---|
| *s/ Daniel L. Berger* | *s/ John Rizio-Hamilton* | *s/ Andrew Zivitz* |
| Daniel L. Berger | Salvatore J. Graziano | David Kessler |
| Jeffrey A. Almeida | John Rizio-Hamilton | Andrew L. Zivitz |
| 485 Lexington Avenue | 1251 Avenue of the Americas | 280 King of Prussia Road |
| New York, NY 10017 | New York, NY 10020 | Radnor, PA 19087 |
| Telephone:  (646) 722-8505 | Telephone: (212) 554-1400 | Telephone:  (610) 667-7706 |
| Facsimile:  (302) 622-7004 | Facsimile: (212) 554-1444 | Facsimile:  (610) 667-7056 |
| dberger@gelaw.com | salvatore@blbglaw.com | dkessler@ktmc.com |
| jalmeida@gelaw.com | johnr@blbglaw.com | azivitz@ktmc.com |

*Co-Lead Counsel for Lead Plaintiffs and the Class*

#997189

24